No. 13-1548

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

———————

IMAGINAL SYSTEMATIC, LLC,

*Plaintiff-Appellee,*

— v. —

LEGGETT & PLATT, INC. AND SIMMONS BEDDING COMPANY,

*Defendants-Appellants.*

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA,
CASE NO. 10-CV-7416, JUDGE R. GARY KLAUSNER

———————

## CORRECTED OPENING BRIEF AND ADDENDUM OF DEFENDANTS-APPELLANTS LEGGETT & PLATT, INC. AND SIMMONS BEDDING COMPANY

———————

Mark S. Parris
Orrick, Herrington &
  Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104
(206) 839-4300

Eric A. Shumsky
Susannah Weaver
Orrick, Herrington & Sutcliffe
  LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

*Attorneys for Defendants-Appellants*

# CERTIFICATE OF INTEREST

Counsel for appellants certify the following:

1.   We represent Leggett & Platt, Inc. and Simmons Bedding Company.

2.   The name of the real party in interest (if the party named in the caption is not the real party in interest) represented:

Not applicable.

3.   All parent corporations and any publicly held companies that own 10% or more of the stock of the parties we represent are:

Leggett & Platt, Inc.:  Street Corporation is a beneficial holder of over 10% of Leggett & Platt, Incorporated's common stock, on behalf of individual owners who each individually own less than 10% of Leggett & Platt, Incorporated's stock.

Simmons Bedding Company:  Dawn Holdings, Inc.

4.   The names of all law firms and the partners or associates that appeared for Leggett & Platt, Inc. and Simmons Bedding Company in the Central District of California or are expected to appear in this court are:

Orrick, Herrington & Sutcliffe LLP
Eric A. Shumsky, Mark S. Parris, Susannah Weaver

Haynes & Boone, LLP
Donald Edward Tiller, Scott Alford Cunning, II, Kenneth Gerald Parker, Debra Janece McComas, Stephanie Sivinski

Date:  February 19, 2014          By:  /s/ Eric A. Shumsky
                                       *Attorney for Defendants-Appellants*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................ i

TABLE OF AUTHORITIES ..................................................iv

STATEMENT OF RELATED CASES.................................. viii

INTRODUCTION ...................................................................1

JURISDICTION ......................................................................3

STATEMENT OF THE ISSUES ...............................................3

STATEMENT OF THE CASE ...................................................4

SUMMARY OF ARGUMENT ................................................10

ARGUMENT.........................................................................13

  I.  IMAGINAL'S POSTJUDGMENT MOTION FOR
PREJUDGMENT INTEREST WAS UNTIMELY AND
SHOULD HAVE BEEN DENIED..................................13

     A.  Imaginal's Motion Required The District Court To
Resolve Matters Encompassed Within The Merits
Long After It Had Entered Judgment....................................13

     B.  The District Court's Boilerplate Award Of "Interest
At The Legal Rate As Provided By The Law" Does
Not Authorize A Different Result............................................21

  II.  THE DISTRICT COURT'S AWARD OF PREJUDGMENT
INTEREST WAS NOT SUPPORTED BY SUBSTANTIAL
EVIDENCE...................................................................30

CONCLUSION .....................................................................39

## ADDENDUM

Order Re Motion for Satisfaction of the Judgment,
Dated July 3, 2013 (Dkt. 578) .............................................A1-5

Judgment on the Verdict,
Dated January 24, 2012 (Dkt. 439).........................................A6

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accentra Inc. v. Staples, Inc.*,
851 F. Supp. 2d 1205 (C.D. Cal. 2011)..........................................34, 38

*Accentra, Inc. v. Staples, Inc.*,
500 F. App'x. 922 (Fed. Cir. 2013) .....................................................35

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*,
807 F.2d 964 (Fed. Cir. 1986) ............................................................26

*B.J. v. Secor*,
Dkt. No. 94, Civ. No. 11-10797 (C.D. Cal. Feb. 14, 2013) ..................27

*Blankenship v. Liberty Life Assurance Co.*,
486 F.3d 620 (9th Cir. 2007) ...................................................33, 34, 38

*Blanton v. Anzalone*,
813 F.2d 1574 (9th Cir. 1987) ..................................... 12, 31, 32, 33, 38

*Cacoperdo v. Demosthenes*,
37 F.3d 504 (9th Cir. 1994) ........................................................34, 38

*Caitlin v. United States*,
324 U.S. 229 (1945) ..........................................................................19

*Coach Inc. v. Celco Customs Servs. Co.*,
Dkt. No. 130, Civ. No. 11-10787 (C.D. Cal. Mar. 28, 2013)................27

*Columbia Brick Works, Inc. v. Royal Ins. Co.*,
768 F.2d 1066 (9th Cir. 1985) ............................................................32

*Cont'l Transfert Technique, Ltd. v. Fed. Gov't of Nigeria*,
850 F. Supp. 2d 277 (D.D.C. 2012) ....................................................26

*Crystal v. United States*,
172 F.3d 1141 (9th Cir. 1999) ............................................................34

*Digital Equip. v. Desktop Direct, Inc.*,
  511 U.S. 863 (1994) ..........................................................................19

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ............................................................................2

*Energy Transp. Grp, Inc. v. William Demant Holdings A/S, WDH, Inc.*,
  697 F.3d 1342 (Fed. Cir. 2012) ........................................................31

*In re Exxon Valdez*,
  484 F.3d 1098 (9th Cir. 2007) ..........................................................31

*In re Frigitemp Corp.*,
  781 F.2d 324 (2d Cir. 1986)................................................................22

*Gen. Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983) .................................................... 8, 17, 18, 26, 29

*In re Jack Raley Constr.*,
  17 F.3d 291 (9th Cir. 1994) ................................................................26

*Keith v. Truck Stops Corp.*,
  909 F.2d 743 (3d Cir. 1990)................................................................29

*Knapp v. Ernst & Whinney*,
  90 F.3d 1431 (9th Cir. 1996) ..............................................................33

*Kosnoski v. Howley*,
  33 F.3d 376 (4th Cir. 1994) ...................................................24, 25, 29

*Lee v. Mike's Novelties, Inc.*,
  Dkt. No. 170, Civ. No. 10-2225 (C.D. Cal. Dec. 28, 2011) .................27

*Leegin Creative Leather Prods., Inc. v. Ayama Indus. Co.*,
  Dkt. No. 1001, Civ. No. 00-12708 (C.D. Cal. Oct. 27, 2009)..............27

*McCalla v. Royal MacCabees Life Ins. Co.*,
  369 F.3d 1128 (9th Cir. 2004) ....................................................*passim*

*McNickle v. Bankers Life & Cas. Co.*,
  888 F.2d 678 (10th Cir. 1989) ..........................................22, 24, 25, 29

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
  175 F.3d 1356 (Fed. Cir. 1999) .......................................................14

*Nelson v. EG & G Energy Measurements Grp.*,
  37 F.3d 1384 (9th Cir. 1994) ............................................................35

*Nystrom v. TREX Co.*,
  339 F.3d 1347 (Fed. Cir. 2003) .........................................................2

*Osterneck v. Ernst & Whinney*,
  489 U.S. 169 (1989) ................................................................*passim*

*Pac. Gas & Elec. Co. v. SEC*,
  127 F.2d 378 (9th Cir. 1942) ..............................................12, 34, 38

*Paddington Partners v. Bouchard*,
  34 F.3d 1132 (2d Cir. 1994).............................................................23

*Pogor v. Makita U.S.A., Inc.*,
  135 F.3d 384 (6th Cir. 1998) ...................................... 22, 23, 24, 25, 29

*Price v. Stevedoring Servs. of Am.*,
  697 F.3d 820 (9th Cir. 2012) ............................................................33

*Transmatic, Inc. v. Gulton Indus., Inc.*,
  180 F.3d 1343 (Fed. Cir. 1999) ...................................................14, 31

*United States v. Gordon*,
  393 F.3d 1044 (9th Cir. 2004) ..........................................................33

*United States v. Great Am. Ins. Co.*,
  738 F.3d 1320 (Fed. Cir. 2013) ...................................................14, 25

*United States v. Pend Oreille Pub. Util. Dist. No. 1*,
  28 F.3d 1544 (9th Cir. 1994).   ...................................................12, 31

*Washington v. Cnty of Los Angeles*,
  Dkt. No. 79, Civ. No. 12-02872 (C.D. Cal. May 28, 2013) .................27

*W. Pac. Fisheries, Inc. v. S.S. President Grant*,
  730 F.2d 1280 (9th Cir. 1984) ...............................................12, 32, 33

**Statutes**

28 U.S.C. § 1291 ...............................................................2, 3, 19

28 U.S.C. § 1295 ......................................................................3

28 U.S.C. § 1338 ......................................................................3

28 U.S.C. § 1961 .................................................................12, 32

35 U.S.C. § 281 et seq. .............................................................3

35 U.S.C. § 284 ...............................................................8, 26, 28

**Rules**

Fed. R. App. P. 4 ...............................................................2, 19

Fed. R. Civ. P. 59 ..........................................................*passim*

Fed. R. Civ. P. 60 ..........................................................*passim*

## STATEMENT OF RELATED CASES

This same case was previously before the Court. Following judgment of infringement in favor of Plaintiff Imaginal Systematic, LLC ("Imaginal"), this Court heard an appeal by Defendants Leggett & Platt, Inc. ("Leggett") and Simmons Bedding Company ("Simmons") from that verdict. *See Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, No. 12-1313. The Court (Rader, C.J., Reyna, J., and Davis, U.S. District J., sitting by designation) affirmed the district court's judgment on February 14, 2013 in a decision reported at 496 F. App'x. 997.

In addition, the current, second appeal previously comprised both an appeal by Imaginal and a cross-appeal by Leggett and Simmons. After this Court issued its mandate in the first appeal, Imaginal asked the district court to award both a running royalty and prejudgment interest. The district court denied the request for a running royalty as untimely, and granted the request for prejudgment interest. *See* A5. On August 2, 2013, Imaginal appealed from the district court's order denying as untimely its request for a running royalty. A711-13. Also on August 2, Defendants appealed from the award of prejudgment interest to Imaginal. A708-10, 714-16. That latter appeal was designated as a

cross-appeal. *See* Dkt. No. 2 in Fed. Cir. No. 13-1548. Imaginal ultimately dismissed its appeal, leaving Defendants' cross-appeal as the sole appeal before this Court. *See* Dkt. No. 3 in Fed. Cir. No. 13-1548.

Finally, currently pending in the Central District of California is a further lawsuit initiated by Imaginal against Defendants. *See Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, No. 13-05463-SVW (RZx) (C.D. Cal. filed July 29, 2013). In it, Imaginal seeks to recoup damages for alleged ongoing infringement—the subject of the running royalty denied to Imaginal as untimely in the litigation giving rise to this appeal. *See* Compl. at 4, No. 13-05463 (C.D. Cal.).

# INTRODUCTION

In litigation, like at a restaurant, once the bill is paid, you can't keep asking for more.  Here, Defendants Leggett and Simmons (collectively "Defendants") already have paid the tab:  Following final judgment of infringement, and full appellate review by this Court, they fully satisfied the judgment by paying more than $5 million to Imaginal. Imaginal, however, keeps going back for more.  Over a year after the district court entered final judgment, and following issuance of this Court's mandate and satisfaction of the judgment, Imaginal asked the district court for prejudgment interest (which the district court erroneously awarded), as well as a running royalty (a request that the district court properly recognized was tardy).

The award of prejudgment interest was error as a matter of law. The Supreme Court has been absolutely clear, in this very context, that Federal Rule of Civil Procedure 59(e) does not countenance this form of serial litigation:  "[A] postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)," *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989), and it therefore "must be filed no later than 28 days after the

entry of the judgment," *see* Fed. R. Civ. P. 59(e). (Here, it is undisputed that this motion was filed more than a year after judgment.) This is for good reason: Rule 59(e) and Federal Rule of Appellate Procedure 4 "[t]ogether … work to implement the finality requirement of 28 U.S.C. § 1291 by preventing the filing of an effective notice of appeal until the District Court has had an opportunity to dispose of all motions that seek to amend or alter what otherwise might appear to be a final judgment." *Osterneck*, 489 U.S. at 174. This rule of finality "prevents the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974); *see also Nystrom v. TREX Co.*, 339 F.3d 1347, 1350 (Fed. Cir. 2003) ("[P]iecemeal litigation is as strictly precluded by the rule of finality for patent cases as it is for any other case.").

Inefficient, piecemeal litigation, however, is precisely what Imaginal has caused here. There was nothing to prevent it from asking for prejudgment interest prior to entry of final judgment, or promptly thereafter, rather than waiting until after appeal. And, had Imaginal done so, this Court would have heard the arguments it is hearing now

in February 2013, when it heard the first appeal.  Instead, the parties are back before the Court, unnecessarily expending their resources and the Court's time, to resolve an issue that should have been resolved long ago.  This is precisely the situation that *Osterneck* forbids.  The litigation properly came to a close many months ago, and the award of prejudgment interest therefore must be reversed.

## JURISDICTION

The district court had jurisdiction under 35 U.S.C. § 281 et seq. and 28 U.S.C. § 1338.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1295.

The district court entered its order on July 3, 2013.  A6.  Both parties timely filed notices of appeal on August 2, 2013.  A708-10, 711-13, 714-16.  Imaginal subsequently withdrew its appeal.  A717-20.

## STATEMENT OF THE ISSUES

I.    Under Rule 59(e), a motion to alter or amend a judgment must be filed within 28 days after the judgment is entered.  The first issue is whether the district court erred in awarding prejudgment interest that Imaginal first requested more than a year after entry of judgment.

II.    Under Ninth Circuit law, prejudgment interest will not be awarded at a rate higher than the weekly average 1-year constant maturity Treasury bill rate unless a higher rate is justified by substantial evidence.  The second issue is whether the district court erred in awarding a 5% interest rate based on Imaginal's summary assertions about borrowing money during the relevant period.

## STATEMENT OF THE CASE

Originally, this was a case about the machines used to create mattress foundations—specifically, a machine that automatically staples springs to a wood frame to make box springs for a bed.  Leggett designs, invents, and manufactures a variety of products, ranging from mattress springs and bedding accessories to wire products, seat mechanisms, and furniture bases.  Among its products is equipment to assemble bedding components, such as the machine that spawned this litigation.  Simmons also creates, develops and produces bedding products, including its well-known Beautyrest®, BeautySleep®, and ComforPedic® bedsets.  Simmons purchased the disputed automatic-staple machines from Leggett in order to assemble its bedsets.  Imaginal has patents for a ma-

chine that automatically staples springs to wooden frames to make box springs.

1.a.  In 2010, Imaginal filed this lawsuit against both Leggett and Simmons in which it alleged that the machine that Leggett manufactured, and that Simmons purchased, infringed Imaginal's patents.  A78-129 (Complaint).  Defendants counterclaimed, asserting that Imaginal's patents were invalid.  A130-38, 139-47 (Answers).  On cross-motions for summary judgment, the district court determined that Imaginal's patents were valid and that they had been infringed.  A148-49, 165-66.  It then held a bench trial on Defendants' equitable defenses (which it rejected) and Imaginal's assertion of willfulness (which it also rejected).  A211-17.  Thereafter, the district court presided over a jury trial on damages.  A59-60.  The jury returned a verdict of $5 million.  A167-68.

On January 24, 2012, the district court entered judgment for Imaginal.  That judgment, which was printed on a standard form used by judges of the Central District of California, provided in relevant part as follows:

IT IS ORDERED AND ADJUDGED that the plaintiff(s):

_____ Imaginal Systematic, LLC _____

_____

_____

recover of the defendant(s):

_____ Leggett & Platt, Inc. and Simmons Bedding Company _____

_____

_____

the sum of _____ $5,000,000.00 (with $3,000,000.00 of the sum to be apportioned to Simmons Bedding Company), with interest thereon at the legal rate as provided by the law, and its costs of action, taxed in the sum of _____.

Clerk, U. S. District Court

Dated: January 24, 2012                    By R. Neal
                                              Deputy Clerk

A6.  The court then administratively closed the case.  A7.

Following issuance of the judgment, Defendants filed a motion for judgment as a matter of law, for a new trial, or to alter or amend the judgment.  A188-210.  For its part, Imaginal filed a single motion for attorneys' fees.  A170-87; *see* A1 (district court order describing this history).  Imaginal did not ask the district court to award prejudgment interest (much less determine the interest rate that would apply to any such award).  The court denied all of the parties' postjudgment motions.

b.  Defendants timely appealed.  Imaginal did not.  The parties submitted full briefing to this Court—171 pages in all—and presented oral argument, which was heard on February 6, 2013.  Ultimately, the

Court "summarily affirmed on all grounds, denied rehearing, and did not remand any issues for [the district court's] determination." Dkt. No. 78 in No. 12-1313. The mandate issued on April 25, 2013. Dkt. No. 84 in No. 12-1313. Four days later, Leggett "wired $5,062,998.32 to [Imaginal]. This amount included the $5,000,000 jury verdict, [mandatory] postjudgment interest calculated at the statutory rate of .11%, and costs imposed by" the district court and this Court. A1.

2. At that point, approximately 1½ years after the district court entered judgment, Imaginal filed further requests for relief. It asked for a running royalty to cover any further uses of the infringing technology; and it sought prejudgment interest at the California statutory rate of 7%, which would amount to approximately $650,000. A231-37.

The district court denied Imaginal's request for a running royalty because the court "was never asked to make any determination involving prospective use of the patent." A5. It noted that only "[n]ow, fifteen months after the Court issued a final judgment, and after the Federal Circuit decided Defendants' appeal," that "Plaintiff requests ongoing royalties." *Id.* As the court went on to explain,

> Plaintiff has failed to offer any precedent for awarding ongoing royalties after such a length in time from entry

7

> of final judgment, and without order of remand from
> the appellate court.  As such, this request amounts to a
> Motion to Alter Judgment pursuant to Rule 59(e).  The
> time for such a request has long since passed.

*Id.*

The court did, however, grant Imaginal's motion for prejudgment interest.  It acknowledged that in general, "a post-judgment motion for prejudgment interest involves reconsideration of the merits of a judgment" and must be brought in a timely post-trial motion under Rule 59(e).  A2.  But it determined that Imaginal's motion was permissible as a motion under Rule 60(a) "to correct a clerical error [that] may be filed anytime."  *Id.* (internal quotation marks omitted).  In concluding that the failure to ask for prejudgment interest was a "clerical error," the court noted that its judgment had authorized "'interest [on the judgment] at the legal rate as provided by law.'"  *Id.* (quoting A6).  That phrase, it concluded, necessarily encompasses prejudgment interest.  This is because (the court reasoned) although prejudgment interest is not available as of right, it is available unless there is "good cause" to withhold it.  *Id.* (discussing 35 U.S.C. § 284 and *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983)).

The court had not previously undertaken any analysis of whether there was good cause to withhold prejudgment interest (nor did it say that it had), and it also had not previously considered what rate of prejudgment interest might be appropriate. *See generally* A2-3. Thus, in further correcting the "clerical error," the court went on to assess the appropriate interest rate based on additional evidence and the parties' arguments about how Imaginal would have used royalties had they been paid during the relevant period. A3-4. Imaginal requested a 7% interest rate (the California state-law statutory rate), which the district court rejected because Imaginal's evidence was "overly general" and "lack[ed] the specific causal connection required to show" that Imaginal would have earned (or avoided paying) a 7% rate "on the entire judgment amount." A4. But, the district court concluded, "in light of evidence establishing [Imaginal's] position as a borrower during the relevant time period," it would impose a 5% interest rate. *Id.* And, the court determined—still in the course of correcting that "clerical error" giving rise to the court's jurisdiction—that it would not exclude interest accrued during the time Imaginal delayed bringing suit because the delay was not unreasonable. *Id.* Defendants timely appealed. A713-15.

## SUMMARY OF ARGUMENT

I.    Imaginal's motion for prejudgment interest was grossly untimely under Rule 59(e), and should have been denied.  The Supreme Court has held that "a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)."  *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989); *accord McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1130 (9th Cir. 2004).  The purpose of this rule is to "help [] further the important goal of avoiding piecemeal appellate review of judgments." *Osterneck*, 489 U.S. at 177.

Imaginal's motion was "a postjudgment motion for discretionary prejudgment interest," and it therefore is governed by *Osterneck* and *McCalla*, which required that the motion be denied.  The motion squarely implicates the considerations underlying Rule 59(e) and the *Osterneck* rule.  Because Imaginal waited so long to file its motion, the district court was forced to consider for the first time, 17 months after it had entered judgment, the merits questions of Imaginal's entitlement to prejudgment interest, and the appropriate rate of and timeframe for

that interest.  And this Court now is forced to address those questions in a second appeal, which it could easily have resolved in the first.

The result is no different merely because the judgment contained boilerplate language awarding "interest at the legal rate as provided by the law." A2.  The fact that prejudgment interest ordinarily is awarded in patent cases does not make it mandatory (as the district court acknowledged, A2-3), and even if it did, *Osterneck* and *McCalla* make clear that the rule is no different for even mandatory prejudgment interest.  *McCalla*, 369 F.3d at 1131-33 (discussing *Osterneck*, 489 U.S. at 176-77 n.3).  Rather, "postjudgment motions for prejudgment interest" are governed by Rule 60 rather than Rule 59 only "when the original judgment explicitly allows for prejudgment interest but fails to specify the precise dollar value of interest, provided that the amount can be calculated later with relative certainty."  *McCalla*, 369 F.3d at 1133.  Here, the judgment does not "explicitly allow[] for prejudgment interest," and calculating that interest was no ministerial task (akin to a "clerical error") that could be easily accomplished.  Instead, the court was required to undertake significant analysis to determine, in light of the additional evidentiary materials put forward by the parties in sup-

11

port of this motion, what interest rate should apply. That is precisely the sort of inquiry—leading to piecemeal appeals—that Rule 59 forbids.

II.    Even if Imaginal had timely filed its motion, the district court erred in awarding prejudgment interest at the rate of 5%. Because Imaginal's substantive claim derives from federal law, federal law governs the award of prejudgment interest. *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1553 (9th Cir. 1994). And, under federal law, "the measure of interest rates prescribed for post-judgment interest in 28 U.S.C. § 1961(a) [i.e., the weekly average 1-year constant maturity Treasury bill rate] is also appropriate for fixing the rate for prejudgment interest unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate." *W. Pac. Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Blanton v. Anzalone*, 813 F.2d 1574, 1576 (9th Cir. 1987). It "must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pac. Gas & Elec. Co.*

12

*v. SEC*, 127 F.2d 378, 391 (9th Cir. 1942) (internal quotation marks omitted). But here, the evidence offered by Imaginal did not remotely rise to this level. It consisted primarily of general statements that the district court had to disregard, and one specific statement (first raised on reply) that Imaginal took out one very small loan (1/100 the size of the verdict) at an interest rate of 8%. That evidentiary showing is an insufficient basis to depart from the Treasury bill rate, which fluctuated between 0.1% and 5.22% during the relevant time period, and which is the appropriate baseline for prejudgment interest.

## ARGUMENT

### I.  IMAGINAL'S POSTJUDGMENT MOTION FOR PREJUDGMENT INTEREST WAS UNTIMELY AND SHOULD HAVE BEEN DENIED.

#### A.  Imaginal's Motion Required The District Court To Resolve Matters Encompassed Within The Merits Long After It Had Entered Judgment.

Imaginal filed its motion for prejudgment interest nearly 1½ years after the district court entered judgment, and indeed not until after this Court entered its mandate following the first appeal. Whether Imaginal's appeal was timely turns on whether Imaginal's request for prejudgment interest was a motion to alter or amend the judgment under Rule 59(e)—in which case it was plainly untimely, because such a mo-

tion "must be filed no later than 28 days after the entry of judgment," *see* Fed. R. Civ. P. 59(e)—or instead can be characterized as a motion to correct a "clerical mistake or a mistake arising from oversight or omission," *see* Fed. R. Civ. P. 60(a), in which case the motion was timely filed.

The Supreme Court and the Ninth Circuit (the regional circuit whose law governs here,[1] and which reviews this question de novo[2]) have already answered this question: "a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)." *Osterneck*, 489 U.S. at 175; *McCalla*, 369 F.3d at 1130-32; *see also United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1326 (Fed. Cir. 2013). Imaginal's motion came more than a year too late, and should have been denied.

---

[1] *See, e.g.*, *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) ("In reviewing district court judgments in patent cases, we apply our own law with respect to patent law issues, but with respect to nonpatent issues we generally apply the law of the circuit in which the district court sits."); *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999) ("neither pre- nor post-judgment interest awards are unique to patent law").

[2] *See McCalla*, 369 F.3d at 1129.

In *Osterneck*, the Supreme Court explained that a postjudgment motion for prejudgment interest is governed by Rule 59 rather than Rule 60 because it goes to the merits of the plaintiff's claim, and typically (although not always) requires the court to make assessments related to those merits. Unlike attorneys' fees and costs, which "are collateral to the main cause of action," prejudgment interest "is an element of [plaintiff's] complete compensation," 489 U.S. at 174-75 (alteration in original) (internal quotation marks omitted). Thus, "[i]n deciding if and how much prejudgment interest should be granted, a district court must examine—or in the case of a postjudgment motion, reexamine—matters encompassed within the merits of the underlying action." *Id.* at 176 (describing factors that may be examined, including "the availability of alternative investment opportunities to the plaintiff" and "whether the plaintiff delayed in bringing or prosecuting the action").

Accordingly, the Court concluded, "a postjudgment motion for discretionary prejudgment interest involves the kind of reconsideration of matters encompassed within the merits of a judgment to which Rule 59(e) was intended to apply." *Id.* "Any evidence relating to the question of prejudgment interest," the Court noted, "should be available

at the time that the other issues in the case are tried." *Id*. at 177-78. Furthermore, the Supreme Court explained, this rule applies even "where prejudgment interest is available as a matter of right," and notwithstanding that "a reexamination of issues relevant to the underlying merits is not necessary." *Id*. at 176 n.3. The interests of consistency and ease of application favor a bright-line rule. *Id*.; *accord McCalla*, 369 F.3d at 1131-32 ("Even if we were to view the question afresh, we would reach the same result the Supreme Court indicated in *Osterneck*.... Under that unitary, bright-line approach, it is not necessary to expend the resources of litigants and federal courts evaluating whether a particular prejudgment interest provision is 'mandatory' or 'discretionary'....").

This appeal falls squarely within the rule of *Osterneck* and *McCalla*, and it vividly illustrates the logic of that rule. Imaginal filed "a postjudgment motion for discretionary prejudgment interest" long after the 28-day filing deadline for Rule 59(e) motions. *Osterneck*, 489 U.S. at 175.[3] Prejudgment interest was "an element of [Imaginal's]

---

[3] Although (as set forth immediately above) nothing turns on whether the interest was discretionary or mandatory, it is plain that the decision

complete compensation," and "[i]n deciding if and how much prejudgment interest should be granted," the district court was required to "reexamine matters encompassed within the merits of the underlying action." *See id.* at 175-76 (internal quotation marks omitted).

Indeed, assessing the appropriate rate of prejudgment interest required substantial litigation in the district court, including a variety of supplemental evidentiary submissions. *See generally* A233-44, 368-85, 570-77, 650-65 (litigation over the proper interest rate); *infra* Section II (explaining why the district court's interest-rate award was erroneously inflated). Thus, the district court had to undertake a series of inquiries that were not "wholly 'separate from the decision on the merits,'" but instead required the district court to "reexamine … matters encompassed within the merits of the underlying action." *Osterneck*, 489 U.S. at 177. *First*, the court had to resolve whether there was "good cause" to withhold prejudgment interest under the circumstances of this case

---

whether to award prejudgment interest here was discretionary. The Supreme Court has explained that "prejudgment interest should *ordinarily* be awarded where necessary to afford the plaintiff full compensation for the infringement." *Gen. Motors Corp.*, 461 U.S. at 654 (emphasis added). But "ordinarily" is not "always": "[35 U.S.C. § 284] states that interest shall be 'fixed by the court,' and in our view it leaves the court some discretion in awarding prejudgment interest." *Id.* at 656-57.

(although the court's order is less than clear on whether it actually undertook this inquiry). A2-3.

*Second*, the district court had to decide what interest rate would "full[y] compensat[e]" Imaginal. *Gen. Motors Corp.*, 461 U.S. at 654. The parties argued extensively over how Imaginal would have used the royalties it sought had it received them previously, *see* A231-37, 368-85, 650-61; Imaginal submitted two additional declarations, A243-44, 662-65; and the district court ultimately adopted a compromise rate of 5%. A4. *Third*, the district court had to resolve the date from which prejudgment interest would run. And that analysis required the court to assess whether Imaginal had unreasonably delayed bringing suit. *Id.* In the language of *Osterneck*, Imaginal's motion "involve[d] the kind of reconsideration of matters encompassed within the merits of a judgment to which Rule 59(e) was intended to apply." 489 U.S. at 176.

Confirming the wisdom of the rule articulated in *Osterneck* and *McCalla*, this case has given rise to just the sort of serial appeals that those decisions aimed to prevent. *Osterneck* explained that its rule "helps further the important goal of avoiding piecemeal appellate review of judgments." *Id.* at 177; *see also id.* ("the rule we adopt today

gives added assurance that an appellate court will have the benefit of the district court's plenary findings with regard to the factual and legal issues subsumed in the decision to grant discretionary prejudgment interest"). As the Court explained, Rule 59(e) and Federal Rule of Appellate Procedure 4(a) "[t]ogether … work to implement the finality requirement of 28 U.S.C. § 1291." *Id.* at 174. Under § 1291, a final decision that may be appealed is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Caitlin v. United States*, 324 U.S. 229, 233 (1945); *see also Digital Equip. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994) (noting the "strong bias of § 1291 against piecemeal appeals").

The Ninth Circuit in *McCalla* heartily embraced this aspect of *Osterneck*, in words that could have been written here:

> [T]his case also illustrates why applying Rule 59(e) furthers the primary purpose of a finality rule, precluding piecemeal appeals. Here, there was already one round of appeals to the Ninth Circuit. Had McCalla moved for prejudgment interest within 10 days of the judgment from which he originally appealed, the district court would have ruled on the motion before that judgment became final. The prior Ninth Circuit panel could then have addressed any issues pertaining to prejudgment interest …. By arguing for an open-ended time period within which a district court may add prejudgment interest to the judgment, McCalla seeks au-

19

thority to ask a second Ninth Circuit panel to rule on an issue that could have been decided by the first.

*McCalla*, 369 F.3d at 1132-33.  Rule 60(a) motions, by contrast, "pertain [] to clerical mistakes, which by definition should not generate appeals." *Id*. at 1133 (internal quotation marks omitted).

This appeal likewise "illustrates why applying Rule 59(e) furthers the primary purpose of a finality rule, precluding piecemeal appeals." *Id*. at 1132; *see also Osterneck*, 489 U.S. at 177.  As in *McCalla*, there has already been one round of appeals.  *See* 369 F.3d at 1132.  And, as in *McCalla*, if Imaginal had moved for prejudgment interest in a timely fashion, the district court could have decided the issue "before [its] judgment became final," and the prior panel of this Court "could then have addressed any issues pertaining to prejudgment interest," such as the appropriate rate of interest.  *See id*. at 1133.

In short, this case falls within the heartland of the rule announced in *Osterneck* and *McCalla*.  Under Rule 59, Imaginal was required to file its motion within 28 days of judgment.  Instead, it waited more than a year.  Its motion should have been denied.

**B.  The District Court's Boilerplate Award Of "Interest At The Legal Rate As Provided By The Law" Does Not Authorize A Different Result.**

In the face of this authority, Imaginal argued (and the district court ultimately agreed) that *Osterneck* did not control because the judgment form used by the district court awarded "$5,000,000 … with interest thereon at the legal rate provided by the law." *Supra* at 6 (reproducing the judgment (A6)); *see* A2-3 (district court order).  But the district court's judgment, which was submitted on a stock form used by the court in the Central District of California, did not resolve Imaginal's entitlement to prejudgment interest; and even if it had, that would not be enough under *Osterneck*, because the court still had to make a series of assessments about the availability and rate of interest that are not addressed to fixing mere "clerical error[s]" within the meaning of Rule 60.

To see why this is so, we begin with the two principal authorities upon which the district court relied when it determined that Imaginal's motion was timely.  According to the district court, "where the judgment awarded interest as required or provided by law, the Sixth and Tenth Circuits held that the post-judgment motion was merely a request to

21

clarify the amount of prejudgment interest, governed by Rule 60(a)." A3 (citing *McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989); *Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384, 388 (6th Cir. 1998)). But the Ninth Circuit already has explained that these cases stand for no such broad proposition—if they did, they would be contrary to *Osterneck* itself. On the contrary, those cases provide that where interest was awarded, and where the interest rate is clear and there remains nothing but a mechanical calculation to be performed, only then is Rule 60 an appropriate vehicle for correcting what truly amounts to a clerical error. *See McCalla*, 369 F.3d at 1133; *accord In re Frigitemp Corp.*, 781 F.2d 324, 327 (2d Cir. 1986) (a Rule 60(a) motion is appropriate "only where the judgment has failed accurately to reflect the actual decision of the decision maker to award such interest or where the judgment has failed to include an amount of interest that the governing law requires to be automatically included in the judgment").

Thus, under those circumstances in *McNickle*, the Tenth Circuit determined that the plaintiffs' postjudgment request for prejudgment interest was timely. The district court judgment had provided for interest on the judgment "as provided by law," 888 F.2d at 680; the relevant

Oklahoma statute *mandated* prejudgment interest, *see id.* at 680 n.1, 682; and, critically, no further proof was required because the rate was set by statute, *see id.* at 680 n.1, and the date from which interest would run was undisputed, *see id.* at 681. The court emphasized at the outset of its analysis that "[a] correction under Rule 60(a) should require no additional proof." *Id.* at 682; *compare Paddington Partners v. Bouchard*, 34 F.3d 1132, 1141 (2d Cir. 1994) ("The absence of an award of pre-decision interest in the original Judgments was not a clerical error within the terms of Rule 60(a), because it could not be corrected without a finding of fact regarding the dates from which such interest should run.").

*Pogor* is similar to *McNickle*, and also unlike this case. There, the Sixth Circuit permitted the plaintiffs to bring a postjudgment Rule 60(a) motion for mandatory prejudgment interest under a Michigan law that "mandate[d] the award of prejudgment interest," where "the method of calculating that interest was not disputed by the parties." 135 F.3d at 388. Accordingly, the motion "simply asked the court to insert the omitted particulars of the prejudgment interest award," and was the kind of "ministerial task [] in the course of supplying in-

formation" contemplated by Rule 60(a). *Id.*; *see also Kosnoski v. Howley*, 33 F.3d 376, 379 (4th Cir. 1994) (where "both parties understood that interest had been awarded; both parties understood that West Virginia law set the rate of prejudgment interest at ten percent; and both parties understood the time frame for computation," a court setting prejudgment interest postjudgment "does not revisit the merits of the question …. [and] [i]nstead … perform[s] a completely ministerial task by plugging the time period, the interest rate and the judgment amount into a preset formula and announcing the result").

In all of these cases, it was clear that (1) the plaintiffs were entitled to prejudgment interest as a matter of law (which under *Osterneck* is not itself sufficient to authorize use of a Rule 60 motion, *see* 489 U.S. at 176-77 n.3), *and* (2) there was no dispute at the time of the postjudgment motion about the interest rate or time period. There was simply no merits work for the district court to do. The Ninth Circuit in *McCalla* understood *McNickle*, *Pogor*, and *Kosnoski* in precisely these terms: "[T]hese cases hold that Rule 60(a) governs postjudgment motions for prejudgment interest when the original judgment explicitly allows for prejudgment interest but fails to specify the precise dollar val-

24

ue of interest, *provided that the amount can be calculated later with relative certainty*." 369 F.3d at 1133 (emphasis added).

Here, neither criterion was met. This was not a situation in which the interest rate and time period were established or undisputed, such that the court had merely "le[ft] the actual calculations for later." *Pogor*, 136 F.3d at 388. There was no "preset formula." *Kosnoski*, 33 F.3d at 379. And this was not the mere correction of a "clerical error." Fed. R. Civ. P. 60(a). On the contrary, Imaginal's postjudgment motion left the court with precisely the sort of work to be done that *Osterneck* forbids. *See* 489 U.S. at 175-76. The court had to assess the quantum of prejudgment interest. In order to do so, it had to examine "additional proof," *see McNickle*, 888 F.3d at 682, in the form of Imaginal's declarations concerning how it would have used the royalty money, and it had to consider the parties' submissions about whether Imaginal had unreasonably delayed bringing suit. In short, the district court's order was a far cry from the "ministerial" acts performed in *McNickle*, *Pogor*, and *Kosnoski*. *See United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1327 (Fed. Cir. 2013) (where postjudgment motion for prejudgment interest "presented anything but a ministerial matter," it was properly rejected

by the district court); *see also In re Jack Raley Constr.*, 17 F.3d 291, 294 (9th Cir. 1994) (where "matter of pre-judgment interest was not [yet] decided," premature notice of appeal was invalid because "[m]aking this decision was more than a ministerial act … it required adjudication of a contested issue").

Here, moreover, the district court had not even awarded prejudgment interest prior to judgment.  As noted above (at 16 n.3), it is well-established that prejudgment interest is not mandatory in patent cases.  Rather, to award prejudgment interest, the district court must assess whether such an award is "necessary to afford the plaintiff full compensation for the infringement." *Gen. Motors Corp.*, 461 U.S. at 654; *see* 35 U.S.C. § 284; *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 967 (Fed. Cir. 1986).  But prior to judgment, Imaginal had not asked the court to assess prejudgment interest, the parties had not briefed the question, and the district court had not made the requisite assessment whether prejudgment interest was appropriate.  *See Cont'l Transfert Technique, Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277, 286 (D.D.C. 2012) ("[T]he parties simply did not brief the issue of [plaintiff's] entitlement to prejudgment interest, much less the rate that

26

would apply to such interest if it were granted, and the Court's Judgment therefore cannot be taken to have ruled on that matter *sub silentio*.").

Rather, the only mention of interest in the judgment came on a fill-in-the-blank form used by the Central District of California,[4] which states that interest would be awarded on the judgment "at the legal rate as provided by the law." *Supra* at 6 (reproducing A6). But this boilerplate form cannot substitute for the legally-required assessment of whether prejudgment interest was properly awarded; if it could, the mere act of using this stock form would transform prejudgment interest under the Patent Act from discretionary to mandatory.

---

[4] The court does not make the form available on its web site, but it is plain from the document itself, and from other cases, that this is the stock form used by the court. *See, e.g.*, Judgment, *Coach Inc. v. Celco Customs Servs. Co.*, Dkt. No. 130 in Civ. No. 11-10787 (C.D. Cal. Mar. 28, 2013); Judgment, *Washington v. Cnty of Los Angeles*, Dkt. No. 79 in Civ. No. 12-02872 (C.D. Cal. May 28, 2013); Judgment, *B.J. v. Secor*, Dkt. No. 94 in Civ. No. 11-10797 (C.D. Cal. Feb. 14, 2013); Judgment, *Lee v. Mike's Novelties, Inc.*, Dkt. No. 170 in Civ. No. 10-2225 (C.D. Cal. Dec. 28, 2011); Judgment, *Leegin Creative Leather Prods., Inc. v. Ayama Indus. Co.*, Dkt. No. 1001 in Civ. No. 00-12708 (C.D. Cal. Oct. 27, 2009). All of these judgments are available through PACER.

The district court's treatment of this issue is puzzling. At no point did it state that prejudgment interest was mandatory (which of course would have been contrary to law). Nor did the court even state that it had intended to award prejudgment interest. Instead, the court undertook to interpret the boilerplate language on the Central District of California form in light of the Patent Act:

> As stated by the U.S. Supreme Court, "prejudgment interest should be awarded under § 284 absent any justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). Therefore the law apparently provides that, absent good cause, the prevailing party to a patent infringement action should receive prejudgment interest. *Accordingly, the law provides for prejudgment interest, and under its terms, the Judgment therefore included prejudgment interest.*

A2-3 (emphasis added). This reasoning is circular. The judgment provided for "interest thereon at the legal rate *as provided by the law*," A6, but the relevant "law"—35 U.S.C. § 284—merely authorizes "interest and costs *as fixed by the court*" (emphases added). *General Motors*

makes clear that such interest is not awarded automatically,[5] and it had not been "fixed" here at the time of judgment.

Nor, in contrast to the Oklahoma law at issue in *McNickle*, or the West Virginia law at issue in *Kosnoski*, *see supra* at 23-24, is there any "legal rate as provided by the law"; rather, under the Patent Act, the district court must assess an appropriate interest rate. *See infra* Section II. The boilerplate language in the Central District of California's judgment form fairly encompasses interest that *must* be awarded, but it cannot be read as granting *discretionary* interest—and particularly not where, as here, the issue had not been presented to the district court, and the district court had undertaken no analysis of whether prejudgment interest was appropriate.

In short, the order here does not satisfy either of the criteria set forth in *McNickle* and *Pogor*. The district court had not made the determination that prejudgment interest should be awarded here, and

---

[5] *Gen. Motors Corp.*, 461 U.S. at 656-57; *see also Keith v. Truck Stops Corp.*, 909 F.2d 743, 746-47 (3d Cir. 1990) (prejudgment interest was discretionary, and a Rule 60 motion was therefore untimely, notwithstanding that interest under the relevant state statute is withheld only "in exceptional cases").

even if it had, it certainly had made no assessment by the time of Imaginal's postjudgment motion of what an appropriate interest rate would be. For that latter reason in particular, *Osterneck* is squarely implicated. *Osterneck* made clear that issues implicating the merits of the case—and it articulated a bright-line rule that that category includes postjudgment motions for discretionary prejudgment interest—should be presented to the district court at the time of final judgment, *see* 489 U.S. at 176-78. District courts therefore will not have to reexamine matters encompassed within the merits long after judgment has been entered, and appellate courts will not face serial appeals. *Id.* at 177. That is precisely what happened here, and it is impermissible under *Osterneck* and *McCalla*. Imaginal's motion was untimely, and prejudgment interest therefore must be denied.

## II. THE DISTRICT COURT'S AWARD OF PREJUDGMENT INTEREST WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

Even if Imaginal's motion had been timely, the district court erred in setting the interest rate at 5% in the face of no serious evidence that a rate above the Treasury bill rate was necessary to fully compensate Imaginal. The determination of how to calculate the appropriate inter-

est rate is governed by Ninth Circuit law.[6]  And, under Ninth Circuit law, determining the correct rate of interest requires a district court to first determine "[w]hether state or federal law applies to determine the amount." *McCalla*, 369 F.3d at 1129.  This "purely legal question" is reviewed de novo.  *Id.*  Then, a district court must properly calculate the interest rate under the applicable law, and a district court's calculation is reviewed for an abuse of discretion. *Blanton,* 813 F.2d at 1576.

As an initial matter, the district court seems not to have conducted the first step of the inquiry.  In the district court, Imaginal argued that prejudgment interest should be awarded at a rate of 7% because "*California courts* have found that a simple interest rate of 7% is usually appropriate to fully compensate the plaintiff for infringement." A234 (emphasis added).  But when a "case arises under federal law, the district court should apply *federal* prejudgment interest principles." *Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d at 1553 (emphasis added); *see In*

---

[6] *See Transmatic*, 180 F.3d at 1347 ("neither pre- nor post-judgment interest awards are unique to patent law").  This Court likewise "applies regional circuit law to evidentiary issues." *Energy Transp. Grp, Inc. v. William Demant Holdings A/S, WDH, Inc.*, 697 F.3d 1342, 1355 (Fed. Cir. 2012).

*re Exxon Valdez*, 484 F.3d 1098, 1102 (9th Cir. 2007) (where "[t]he substantive claim itself" is "analyzed under federal … law," "it follow[s] logically that prejudgment interest … [is] a question of federal law"); *Columbia Brick Works, Inc. v. Royal Ins. Co.*, 768 F.2d 1066, 1071 (9th Cir. 1985) (rejecting contention that a state interest rate should govern).

Here, Imaginal's substantive claim that an award of prejudgment interest is necessary to fully compensate for the infringement derives entirely from federal patent law. Federal law therefore governs the calculation of prejudgment interest. And, under federal law, the Ninth Circuit has concluded that as a baseline, "the measure of interest rates prescribed for post-judgment interest in 28 U.S.C. § 1961(a) [i.e., the Treasury bill rate] is also appropriate for fixing the rate for prejudgment interest." *See W. Pac. Fisheries*, 730 F.2d at 1289; *see also Blanton*, 813 F.2d at 1576 ("[T]his circuit has a strong policy in favor of the Treasury bill rate."). During the relevant period, that rate fluctuated between 0.1% and 5.22%. Federal Reserve Board, 1-Year Constant Maturity Treasury Rates; *see* A380-81. But rather than beginning with that very low, federal baseline, the district court began with California's 7% rate—ultimately concluding that it was not entirely supported by

32

the evidence, and adopting a compromise rate (5%) that was nearly as high.

Nor was there anything in the record to support this windfall for Imaginal. At step two of the analysis of prejudgment interest, the Ninth Circuit permits deviations from the Treasury bill default rate only where "the trial judge finds, *on substantial evidence*, that the equities of the particular case require a different rate."[7] The risk-free Treasury bill rate is generally appropriate because it avoids the speculation involved in guessing how a plaintiff would have invested the money and how those investments would have fared. *See Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1441 (9th Cir. 1996).

"'Substantial evidence' is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Blankenship v. Liberty Life Assurance Co.*, 486 F.3d 620, 628 (9th Cir. 2007) (quoting *Blanton*, 813 F.2d at 1576). It is "more than a scintilla,

---

[7] *W. Pac. Fisheries, Inc.*, 730 F.2d at 1289 (emphasis added); *see Price v. Stevedoring Servs. of Am.*, 697 F.3d 820, 836-37 (9th Cir. 2012) (same in context of disability under the Longshore Act); *Blankenship v. Liberty Life Assurance Co.*, 486 F.3d 620, 627-28 (9th Cir. 2007) (same in ERISA context); *United States v. Gordon*, 393 F.3d 1044, 1058 n.12 (9th Cir. 2004) (same in victim restitution context).

and must do more than create a suspicion of the existence of the fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pac. Gas & Elec. Co.*, 127 F.2d at 391 (internal quotation marks omitted).  For instance, the Ninth Circuit has concluded that the record *was* "adequate to satisfy the 'substantial evidence' requirement" where a plaintiff provided evidence that "as a result of [defendant's] nonpayment of benefits, [he] was forced to replace the $6,093.82 per month he would have received with his own personal funds," and that "[t]hose funds would otherwise have been invested in a Vanguard mutual fund in which he had already invested over one half million dollars, and which had a 10.01-percent return since its inception." *Blankenship*, 486 F.3d at 628.

By contrast, under Ninth Circuit law, "[a] single conclusory allegation," that is "unspecified …, without more, is not substantial evidence." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994); *see Crystal v. United States*, 172 F.3d 1141, 1148 n.11 (9th Cir. 1999) ("conclusory … statement" that agent "outlined the details of the tax issues and facts" "is not substantial evidence that anything significant was disclosed"); *Accentra Inc. v. Staples, Inc.*, 851 F. Supp. 2d 1205, 1241

(C.D. Cal. 2011) (a "summary comment" that a 4.5% interest rate was applied to a plaintiff's borrowing of funds, without more, is not substantial evidence supporting an award above the Treasury bill rate), *vacated in part on other grounds by Accentra, Inc. v. Staples, Inc.*, 500 F. App'x. 922 (Fed Cir. 2013).  To award more than the Treasury bill rate, therefore, the district court must make a finding, based upon substantial evidence, that the higher rate is "justified," i.e., that the equities "require" a different rate.  *Nelson v. EG & G Energy Measurements Grp.*, 37 F.3d 1384, 1391 (9th Cir. 1994).

The scant evidence presented by Imaginal did not remotely meet this standard.  With its motion for prejudgment interest, Imaginal filed a cursory, one-page declaration by its CEO stating that, from the time of infringement to the time of judgment, "Imaginal has not had sufficient capital to invest or revenue to fund its business activities.…  As such, Imaginal has needed to borrow or to sell equity at a premium to fund its business … and had to share recoveries in this case at a premium to fund this litigation."  A244.  The declaration did not specify the rate or amount of money that Imaginal purportedly borrowed.  Then, with its reply brief, Imaginal filed a supplemental declaration—this

time, two pages long—stating that, "if [Leggett] ha[d] compensated Imaginal for the use of the patented invention," Imaginal would not have "had to agree to sharing a higher percentage of its recoveries with its counsel"; that Imaginal paid over "$50,000 in premiums" to allow it to raise money from its shareholders to fund the litigation; and that, in June 2004, Imaginal "borrowed $50,000 with an annual 8 percent interest rate," which rose to 12% if not paid in full by June 2012. A663-64.

The district court properly disregarded almost all of Imaginal's evidence as "overly general." A4. It acknowledged that "[t]he *only* specific evidence provided by [Imaginal] relates to a relatively small amount of funds [Imaginal] borrowed in June 2004, at a rate of 8% (which then increased to 12%)." *Id.* But the court nonetheless found that Imaginal's declarations "provide[] evidence that [Imaginal] suffered some detriment because it was unable to use the hypothetical royalties," and so while that evidence "lacks the specific causal connection required to establish that" Imaginal should be compensated at a rate of 7%, A4, the court nonetheless concluded that "in light of evidence establishing [Imaginal's] position as a borrower during the relevant time period, the Court imposes a simple 5% rate of interest." *Id.*

The court did not explain, however, why evidence that was too general to justify a 7% rate would justify a 5% rate, and simple math is to the contrary. Imaginal sought (and was awarded) hundreds of thousands of dollars of interest on the verdict of $5 million. Specifically, it asked for some $650,000 based on its 7% requested rate (which yields about $470,000 at the 5% rate that the court awarded). By contrast, using the default Treasury bill rate would have yielded just $165,000 in interest. A3.

But the "only specific evidence," A4, that the district court relied upon to award Imaginal these additional hundreds of thousands of dollars was 8% interest paid on a $50,000 loan, followed by a shorter period at 12%—in short, approximately $38,000 in total.[8] Even leaving aside the utterly general nature of the assertion that Imaginal had to borrow this money at this rate (and apparently couldn't refinance it during this period of historically low interest rates), the math just

---

[8] Based on the figures submitted by Imaginal's CEO in his declaration, Imaginal paid 8% yearly on $50,000 for eight years (i.e., $32,000 without compounding, or about $42,000 with annual compounding), and a 12% annual interest rate on $50,000 for approximately one year (i.e., approximately $6000). A663. Imaginal did not provide actual dates to use in calculating the interest.

doesn't add up.  Actual interest of $38,000 can't possibly justify award-
ing hundreds of thousands of dollars in prejudgment interest.

So if this is what the district court relied upon, it is far from "sub-
stantial evidence" supporting a 5% interest rate.  And if (as the court
elsewhere suggested) the court meant to rely on more general "evidence
establishing [Imaginal's] position as a borrower during the relevant
time period," A4, then this is just like the evidence underlying the
awards that were overturned in *Cacoperdo* and *Accentra*:  "conclusory,"
"unspecified," and completely "summary."    37 F.3d at 510;
851 F. Supp. 2d at 1241.  The evidence credited by the district court
might create a "mere suspicion" that Imaginal borrowed more, *see Pac.
Gas & Elec. Co.*, 127 F.2d at 391, but it simply does not constitute "such
relevant evidence as a reasonable mind might accept as adequate to
support a conclusion" that the "equities … *require[d]*" Imaginal to be
compensated above the default Treasury bill rate, *see Blanton*, 813 F.2d
at 1575-76 (emphasis added).  *Compare Blankenship*, 486 F.3d at 628
(providing specific details about how the money would have been in-
vested, with support from the plaintiff's investment history).  Because
the district court's award of a 5% interest rate was not supported by

"substantial evidence" that such an award was "required," then if interest is to be awarded at all, it should be awarded at the risk-free Treasury bill rate.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

Date: February 19, 2014                 By: /s/ Eric A. Shumsky

Eric A. Shumsky
Susannah Weaver
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

Mark S. Parris
Orrick, Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104
(206) 839-4300

*Attorneys for Defendants-Appellants*

**ADDENDUM**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-07416-RGK (SSx) | Date | July 3, 2013 |
|---|---|---|---|

| Title | **IMAGINAL SYSTEMATIC, LLC v. LEGGETT & PLATT, INC., et al** |
|---|---|

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE |
|---|---|

| Sharon L. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

| Proceedings: | **(IN CHAMBERS) Order Re: Defendants' Motion for Satisfaction of Judgment (DE 533); Plaintiff's Motion to Determine the Amount of Prejudgment Interest (DE 531); Plaintiff's Motion for an Award of Ongoing Royalties (DE 532)** |
|---|---|

## I.    FACTUAL BACKGROUND

In October 2010, Imaginal Systematic, LLC ("Plaintiff") filed a patent infringement action against Leggett & Platt, Inc. ("Leggett") and Simmons Bedding Co. ("Simmons") (collectively, "Defendants"). Plaintiff alleged that Defendants willfully infringed on three patents related the manufacture of box spring mattresses. On November 3, 2011, the Court rendered summary judgment against Defendants on the issue of invalidity. On November 23, 2011, the Court rendered summary judgment against Defendants on the issue of infringement.

The Court conducted a bench trial on January 18, 2012, to adjudicate Defendants' equitable defenses and Plaintiff's allegation of willfulness. The Court found that (1) Defendants did not willfully infringe, and (2) Defendants failed to establish laches or equitable estoppel as affirmative defenses. The next day, the Court presided over a jury trial on the issue of damages only. The jury returned a verdict of $5,000,000, of which $3,000,000 was to be apportioned to Simmons. The Court denied all the parties' post-judgment motions, including Plaintiff's Motion for Attorney's Fees, which was the only post-judgment motion Plaintiff had filed. On January 24, 2012, the Court rendered judgment on the verdict.

On April 9, 2012, Defendants appealed the judgment. The Federal Circuit summarily affirmed on all grounds, denied rehearing, and did not remand any issues for this Court's determination. On April 29, 2013, Leggett wired $5,062,998.32 to Plaintiff. This amount included the $5,000,000 jury verdict, post-judgment interest calculated at the statutory rate of .11%, and costs imposed by this Court and the Federal Circuit.

Currently before the Court are Defendants' Motion for Satisfaction of Judgment, Plaintiff's

**A1**

Motion to Determine the Amount of Prejudgment Interest, and Plaintiff's Motion for an Award of Ongoing Royalties. For the following reasons, the Court **grants** Plaintiff's Motion to Determine the Amount of Prejudgment Interest. The Court **denies** Plaintiff's Motion for an Award of Ongoing Royalties and Defendant's Motion for Satisfaction of Judgment.

## II.    DISCUSSION

By way of its current motions, Plaintiff seeks (1) prejudgment interest in the amount of $655,636,[1] and (2) royalties for ongoing willful infringement. Defendants, on the other hand, contend that judgment has been paid in full. The Court addresses the issues of prejudgment interest and ongoing royalties in turn.

### A.    Prejudgment Interest

The parties dispute both the timeliness of Plaintiff's post-judgment motion for prejudgment interest, as well as the appropriate rate of interest to apply. Upon review of the facts and applicable law, the Court finds that Plaintiff's motion is timely under Federal Rule of Civil Procedure 60(a) ("Rule 60(a)"), and that a prejudgment interest rate 5% is appropriate.

#### 1.    *Plaintiff's Motion to Determine Prejudgment Interest is Timely*

Plaintiff requests that the Court grant $655,636 in prejudgment interest pursuant to 35 U.S.C. § 284. Defendants argue Plaintiff's Motion to Determine the Amount of Prejudgment Interest is untimely, as it is a motion to alter or amend the judgment, subject to Federal Rule of Civil Procedure 59(e)'s time limitation. Plaintiff, on the other hand, contends its Motion is not untimely, as it is a motion to correct an error arising from oversight or omission under Federal Rule of Civil Procedure 60(a). Upon review of the facts, the Court finds in favor of Plaintiff on this issue.

Generally, a post-judgment motion for prejudgment interest involves reconsideration of the merits of a judgment to which Rule 59(e) was intended to apply: "In deciding if and how much prejudgment interest should be granted, a district court must examine–or in the case of a post-judgment motion, reexamine–matters encompassed within the merits of the underlying action." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 (1989); *see McCalla v. Royal MacCabees Life Ins. Co.* 369 F.3d 1128 (9th Cir. 2004). Rule 59(e) motions must be filed within 28 days after the entry of a judgment. Fed. R. Civ. P. 59(e). However, where the judgment awards prejudgment interest but does not specify the amount, a post-judgment motion to fix the amount is a Rule 60(a) motion to correct a "clerical error" and may be filed at any time. *Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384, 387 (6th Cir. 1998).

Here, the Judgment provided that Defendants would pay $5,000,000 (with $3,000,000 of the sum to be apportioned to Simmons), "with interest thereon at the legal rate as provided by law...." (DE 439). The Judgment provided for interest, but did not specify post-judgment or prejudgment interest. Therefore, the Court's determination of this issue turns on whether "interest ... as provided by law" includes prejudgment interest. The Court finds that it does.

35 U.S.C. § 284 provides for the calculation of damages "together with interest ... as fixed by the court." As stated by the U.S. Supreme Court, "prejudgment interest should be awarded under § 284 absent any justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). Therefore, the law apparently provides that, absent good cause, the prevailing party to a patent infringement action should receive prejudgment interest. Accordingly, the law provides for

---

[1] Plaintiff also requests additional post-judgment interest on this prejudgment amount.

prejudgment interest, and under its terms, the Judgment therefore included prejudgment interest.

Circuit court holdings are consistent with this result. In *McCalla*, the Ninth Circuit held that a post-judgment motion for prejudgment interest was governed by Rule 59(e). *McCalla*, 369 F.3d at 1134. In this case, however, the district court's original judgment was completely silent as to interest. *Id.* at 1129. In contrast, where the judgment awarded interest as required or provided by law, the Sixth and Tenth Circuits held that the post-judgment motion was merely a request to clarify the amount of prejudgment interest, governed by Rule 60(a). *Pogor*, 135 F.3d 384 at 388 ("We agree that Rule 60(a) applies . . . where the language of the judgment awards interest as required by law but leaves the actual calculations for later."); *McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989) (holding that, where judgment stated "with interest thereon as provided by law," the plaintiffs were merely requesting that the court insert the omitted particulars of the prejudgment interest award).

In *Pogor* and *McNickle*, the courts interpreted "interest" as provided or required by law to include prejudgment interest. In arriving at their decisions, the courts looked to the laws underlying the respective plaintiffs' claims and found that the laws provided for prejudgment interest. Here, as previously stated, the laws involving patent infringement also provide for prejudgment interest. *Gen. Motors Corp.*, 461 U.S. at 657.

Therefore, the Court finds that Plaintiff's Motion to Determine the Amount of Prejudgment Interest is governed by Rule 60(a) and is not time-barred.

### 2.   *Appropriate Rate of Interest*

Plaintiff requests that the Court grant $655,636, calculated at the 7% California statutory rate for prejudgment interest. Defendants urge the Court to adopt the U.S. Treasury bill risk-free investment rate and award Plaintiff $164,993 in prejudgment interest. Alternatively, Defendants argue that the Court should adopt the prime rate and award Plaintiff $362,966.

Under Section 284, the prevailing party is entitled to "interest and costs as fixed by the court." 35 U.S.C. § 284. The rate of prejudgment interest and whether it should be compounded are matters left to the discretion of the trial court. *Bio-Rad Labs. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986). The purpose of prejudgment interest is to put the patent owner in as good a position as he would have been had the infringer entered into a reasonable royalty agreement. *Id.* at 969.

"The question of the rate at which such an award should be made is a matter left to the sound discretion of the trier of fact." *Id.* at 964, 969. In exercising its discretion, courts consider whether the patent owner was in a position to invest hypothetical royalty payments and whether such payments would have offset borrowing by the patent owner. *See, e.g.*, *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (awarding patent holder the interest rate it paid to borrow money in order to finance its operations during the infringement litigation). In the absence of evidence indicating that the patent holder "borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [the defendant]'s infringement," the U.S. Treasury bill rate is acceptable. *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming district court's award of prejudgment interest at the U.S. Treasury bill rate). Courts rely on the U.S. Treasury bill rate because it provides a uniform basis for arriving at a reasonable rate of risk-free return, divorced from "the speculation involved with determining whether possibly higher-yielding, but riskier, investments would have been successful for the patent holder." *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 136-37 (D. N.J. 2007).

Here, Plaintiff has introduced the following evidence: (1) due to the lack of capital, Plaintiff had to borrow or sell equity at a premium to fund its business, and share recoveries in this case at a premium

**A3**

to fund this litigation (Dunn Decl., ¶ 2); (2) due to the lack of revenue, Plaintiff had to borrow money at an 8% rate, which increased to 12% because it could not timely pay the loan in full (Dunn Supplemental Decl., ¶ 2-3). This provides evidence that Plaintiff suffered some detriment because it was unable to use the hypothetical royalties. Nonetheless, Plaintiff's evidence is insufficient to justify the higher 7% interest rate. Specifically, most of Plaintiff's evidence is overly general. The only specific evidence provided by Plaintiff relates to a relatively small amount of funds Plaintiff borrowed in June 2004, at a rate of 8% (which then increased to 12%). Moreover, Plaintiff's evidence lacks the specific causal connection required to establish that Plaintiff would have either yielded a 7% return or not suffered a 7% loss on the entire judgment amount. However, in light of evidence establishing Plaintiff's position as a borrower during the relevant time period, the Court imposes a simple 5% rate of interest. The amount of prejudgment interest shall be calculated for each defendant starting from the date of infringement to the date of Entry of Judgment.

### 3. *Period of Time Interest Accrues*

Defendants argue that, if the Court awards prejudgment interest, the award should exclude interest during the time Plaintiff delayed bringing suit. Specifically, Defendants seek to toll interest from February 2010, the date on which the Court found Plaintiff had sufficient evidence to sue, to October 2010, when Plaintiff filed its complaint. The Court disagrees.

The court can refuse to grant prejudgment interest during a period where the plaintiff delayed filing suit as a litigation tactic. *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1361-62 (Fed. Cir. 2001). However, absent prejudice to the defendants, any delay by [the patentee] does not support the denial of prejudgment interest." *Id.* at 1361-62.

Here, there is no evidence that Plaintiff delayed suit as a litigation tactic. In fact, the Court has already found that Plaintiff's delay, if any, was not unreasonable or inexcusable. (DE 471).

For the foregoing reasons, the Court awards Plaintiff prejudgment interest from August 2005 through January 24, 2012 at a rate of 5% and declines Defendants' request to toll prejudgment interest from February 2010 to October 2010.

## B.   **On-going Royalties**

At trial, the jury rendered a verdict awarding Plaintiff $5,000,000 for "the total amount adequate to compensate [Plaintiff] for the use made of the patented invention by the defendants up to the date of [the] verdict." The jury then apportioned $3,000,000 of the total amount to Simmons for its infringement. Plaintiff did not request injunctive relief.

It is undisputed that, since the jury verdict, Defendants have continued using the infringing machines to manufacture box spring mattress foundations. Plaintiff argues that this conduct constitutes ongoing willful infringement, and seeks ongoing royalties at a rate of $0.88 per wire grid manufactured by Defendants using the existing and any future infringing machines. Defendants argue that imposition of ongoing royalties is improper, as the jury's verdict is most consistent with a paid-up royalty, and the Court should deem it as such.

As an initial matter, the Court disagrees with Defendants that the jury verdict contemplated a paid-up royalty. Contrary to Defendants' assertion, the fact that the award amount fell closer to the "paid-up calculation" proposed by Defendants is unavailing. The language of the Verdict Form expressly states that the award was compensation for Defendants' *use of the patented invention up to the date of the verdict.* (*See* Verdict Form (filed January 24, 2012), DE 436.) Moreover, review of the court records, including the proposed and final Jury Instructions, show no indication that royalties for ongoing

use were ever at issue.

Notwithstanding, the Court finds imposition of ongoing royalties unwarranted. As pointed out by Plaintiff, the Federal Circuit has endorsed the award of ongoing royalties in certain situations where an injunction is either inappropriate or stayed, and use of the patent continues. *See ActiveVideo Networks, Inc. v. Verizon Comm's* Inc., 694 F.3d 1312, 1343 (Fed. Cir. 2012); *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293 (Fed. Cir. 2007). However, in *ActiveVideo*, *Paice*, and the other cases on which Plaintiff relies, the courts imposed ongoing royalties as part of the final judgments, after consideration of the appropriateness of injunctive relief. Here, the Court was never asked to make any determination involving prospective use of the patent. Now, fifteen months after the Court issued a final judgment, and after the Federal Circuit decided Defendants' appeal, Plaintiff requests ongoing royalties. Plaintiff has failed to offer any precedent for awarding ongoing royalties after such a length in time from entry of final judgment, and without order of remand from the appellate court. As such, this request amounts to a Motion to Alter Judgment pursuant to Rule 59(e). The time for such a request has long since passed. Therefore, the Court finds imposition of ongoing royalties in the current case improper.

## C.     Satisfaction of Judgment

Defendants contend that they have satisfied the Judgment in full. As previously stated, Defendants argue that Plaintiff's request for prejudgment interest is untimely, and that the $5,000,000 jury award constituted a paid-up royalty. Prejudgment interest and ongoing royalties are the only grounds on which Plaintiff opposes Defendants' motion

Based on the Court's findings in Section II A. and B., above, the Court **denies** Defendants' motion. Defendants will not have satisfied judgment until the correct amount of prejudgment interest has been paid in full to Plaintiff, along with additional post-judgment interest on the prejudgment interest amount.[2]

## III.   CONCLUSION

In light of the foregoing, the Court **grants** Plaintiff's Motion to Determine Prejudgment Interest. Specifically, the Court corrects the Judgment, pursuant to Rule 60(a), to include a simple prejudgment interest rate of 5% on the $5,000,000 verdict amount (calculated as to each defendant based on the apportioned amount).[3] The Court **denies** Plaintiff's Motion for Ongoing Royalties and Defendants' Motion Satisfaction of Judgment.

**IT IS SO ORDERED.**

_____ : _____

Initials of
Preparer

_____

---

[2] Based on the Court's correction to the damages award, the post-judgment interest amount shall include interest on the amount of prejudgment interest calculated. This additional post-judgment interest amount shall be calculated starting from January 24, 2012, the date Judgment was entered.

[3]

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IMAGINAL SYSTEMATIC, LLC,<br><br><br>PLAINTIFF(S)<br><br>v.<br><br>LEGGETT & PLATT, INC., et al.,<br><br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV 10-07416 RGK (SSx)<br><br>**JUDGMENT ON THE VERDICT<br>FOR THE PLAINTIFF(S)** | |

This action came on for jury trial, the Honorable R. Gary Klausner, District Judge, presiding, and the issues having been duly tried and the jury having duly rendered its verdict,

IT IS ORDERED AND ADJUDGED that the plaintiff(s):

Imaginal Systematic, LLC

recover of the defendant(s):

Leggett & Platt, Inc. and Simmons Bedding Company

the sum of __ $5,000,000.00 (with $3,000,000.00 of the sum to be apportioned to Simmons Bedding Company), with interest thereon at the legal rate as provided by the law, and its costs of action, taxed in the sum of _____.

Clerk, U. S. District Court

Dated: January 24, 2012

By R. Neal
Deputy Clerk

At: Los Angeles, CA

cc: *Counsel of record*

JUDGMENT ON THE VERDICT FOR THE PLAINTIFF(S)

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February 2014, I caused

the Corrected Opening Brief and Addendum of Defendants-Appellants

Leggett & Platt, Inc. and Simmons Bedding Company to be electronical-

ly filed with the Clerk of the Court using CM/ECF, which will automati-

cally send notification of such filing to the following counsel of record:

Steven Mark Hanle.


Date: February 19, 2014        By: /s/ Eric A. Shumsky
                                   *Attorney for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE
## UNDER FEDERAL RULES OF APPELLATE PROCEDURE
## 32(a)(7) AND FEDERAL CIRCUIT RULE 32

Counsel for Defendants-Appellants certifies that the brief contained herein has a proportionally spaced 14-point typeface, and contains 7,883 words, based on the "Word Count" feature of Word 2007, including footnotes and endnotes.  Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, Table of Authorities, and Statement of Related Cases.

Date: February 19, 2014          By: /s/ Eric A. Shumsky
                                 _____
                                 *Attorney for Defendants-Appellants*