**2013-1548**

# United States Court of Appeals
# for the Federal Circuit

---

IMAGINAL SYSTEMATIC, LLC,

*Plaintiff-Appellee,*

*v.*

LEGGETT & PLATT, INC.
and SIMMONS BEDDING COMPANY,

*Defendants-Appellants,*

*and*

DOES 1-10, INCLUSIVE,

*Defendants.*

---

*Appeal from the United States District Court for the Central District of
California in Case No. 10-CV-7416, Judge R. Gary Klausner.*

---

## CORRECTED BRIEF OF PLAINTIFF-APPELLEE
## IMAGINAL SYSTEMATIC, LLC

STEVEN M. HANLE
shanle@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
(714) 513-5100

*Counsel for Plaintiff-Appellee
Imaginal Systematic, LLC*

Filed: April 30, 2014
Corrected: May 2, 2014

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 21(a)(2) and 47.4(a)(1), counsel for the

Plaintiff-Appellee Imaginal Systematic, LLC certifies the following:

1. The full name of every party represented by me:

    Imaginal Systematic, LLC.

2. The name of the real party in interest party represented by me:

    N/A.

3. All parent corporations and any publicly held companies that own 10

    percent or more of the stock of the party I represent are:

    None.

The names of all law firms and the partner or associates that appeared in the

trial court or are expected to appear in this court for the party I now represent are:

Sheppard Mullin Richter & Hampton LLP

Steven M. Hanle

Paul Garrity

Date: April 30, 2014

                    /s/ *Steven M. Hanle*
                    Steven M. Hanle
                    **SHEPPARD MULLIN RICHTER
                    & HAMPTON LLP
                    Attorney for Plaintiff-Appellee,
                    Imaginal Systematic, LLC**

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ..................................................................................i

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF RELATED CASES .....................................................vi

STATEMENT OF THE ISSUES ...............................................................1

STATEMENT OF THE CASE .....................................................................1

SUMMARY OF ARGUMENT ....................................................................5

ARGUMENT ................................................................................................8

    I.    STANDARD OF REVIEW ................................................................8

    II.   THE DISTRICT COURT PROPERLY AWARDED
          PREJUDGMENT INTEREST IN THE JUDGMENT, AND
          WAS PERMITTED TO SET THE RATE PURSUANT TO
          RULE 60(a) ..............................................................................9

          A.    Appellants Waived Any Right to Challenge the Award of
                Prejudgment Interest .................................................................9

          B.    Appellants' Motion to Set the Amount of Prejudgment
                Interest Is Governed by Rule 60(a) ..........................................11

          C.    *Osterneck* and *McCalla* Do Not Apply.....................................16

          D.    Appellants' Additional Arguments  That *Osterneck*
                Should Apply Are Without Merit ..............................................18

    III.  THE DISTRICT COURT DID NOT ABUSE ITS
          DISCRETION IS SETTING THE RATE OF INTEREST ...............20

CONCLUSION..........................................................................................27

CERTIFICATE OF SERVICE ..................................................................28

CERTIFICATE OF COMPLIANCE..........................................................30

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Aldon Industries, Inc. v. Don Myers & Associates, Inc.*,
    547 F.2d 924 (5th Cir.1977) ............................................................................14

*AMP Inc. v. Lantrans Inc.*,
    22 U.S.P.Q. 2d 1448 (C.D. Cal. 1991) .............................................................26

*Bio-Rad Labs. v. Nicolet Instrument Corp.*,
    807 F.2d 964 (Fed. Cir. 1986)........................................................ 20, 21, 22, 26

*Blanton v. Anzalone*,
    813 F.2d 1574 (9th Cir. 1987) ............................................................................8

*Engel Industries, Inc. v. Lockformer Co.*,
    166 F.3d 1379 (Fed. Cir. 1999).............................................................. 5, 9, 20

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
    2008 WL 928535 (N.D. Cal. Apr. 4, 2008) ......................................................26

*General Motors Corp.v. Devex Corp.*,
    461 U.S. 648 (1983)............................................... 5, 7, 8, 9, 18, 20, 22

*Imaginal Systematic, LLC v. Leggett & Platt, Inc.*,
    No. 12-1313, 496 F. App'x. 997 .......................................................v, 2

*Imaginal Systematic, LLC v. Leggett & Platt, Inc.*,
    No. 13-05463-SVW (RZx) (C.D. Cal. filed July 29, 2013) .................................5

*In re Hayes Microcomputer Prod., Inc. Patent Litig.*,
    766 F. Supp. 818 (N.D. Cal. 1991) ...................................................................23

*In re Leggett & Platt*,
    *Case No.* 2011-M986 .............................................................................v

*Kosnoski v. Howley*,
    33 F.3d 376 (4th Cir. 1994) ................................................................. 6, 12-17

*Lam v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983)............................................................. 7, 23, 24

*Lummus Indus., Inc. v. D.M. & E. Corp.*,
862 F.2d 267 (Fed. Cir. 1988).................................................................19

*McCalla v. Royal MacCabees Life Ins. Co.*,
369 F.3d 1128 (9th Cir. 2004)................................................... 6, 16, 17

*McNickle v. Bankers Life & Cas. Co.*,
888 F.2d 678 (10th Cir. 1989)................................................. 6, 8, 11-17

*Osterneck v. Ernst & Whinney*,
489 U.S. 169 (1989).................................................6, 11-16, 18, 19

*Pogor v. Makita U.S.A., Inc.*,
135 F.3d 384 (6th Cir. 1998)..................................................... 6, 13-17

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
723 F. Supp. 2d 1284 (S.D. Cal. 2010)..................................................23

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
862 F.2d 1564 (Fed. Cir. 1988)......................................................... 7, 23

*Transmatic, Inc. v. Gulton Indus., Inc.*,
180 F.3d 1343 (Fed. Cir. 1999)..........................................................21

*Tronzo v. Biomet, Inc.*,
236 F. 3d 1342 (Fed. Cir. 2001)............................................... 9, 10, 20

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
939 F.2d 1540 (Fed. Cir. 1991)............................................... 8, 21-26

*United States v. Kenner*,
455 F.2d 1 (7th Cir. 1972) ...............................................................14

*W. Pac. Fisheries, Inc. v. S.S. President Grant*,
730 F.2d 1280 (9th Cir. 1984) ...................................................... 22, 23

**Statutes**

28 U.S.C. § 1961...................................................................................21

35 U.S.C. § 284.......................................................................... 9, 20, 21

**Rules**

Fed. Cir. Rule 28(b) .........................................................................1

Fed. Cir. Rule 28(a)(8) .....................................................................1

Fed. R. Civ. P. 59(e) .............................................................. 3, 6, 11, 13-17

Fed. R. Civ. P. 60(a) ..................................................... 1-3, 5, 6, 8, 11-13, 15-17

# STATEMENT OF RELATED CASES

Defendants-Appellants previously filed the following mandamus petition and it arises from the same civil action: *In re Leggett & Platt, Case No*. 2011-M986, mandamus denied on July 7, 2011 in an unpublished Order authored by Judge Newman and joined by Judges Schall and Dyk.

Following judgment of infringement in favor of Plaintiff Imaginal Systematic, LLC ("Imaginal"), this Court heard an appeal by Defendants Leggett & Platt, Inc. ("Leggett") and Simmons Bedding Company ("Simmons") from that judgment.  See *Imaginal Systematic, LLC v. Leggett & Platt, Inc*., No. 12-1313. The Court (Rader, C.J., Reyna, J., and Davis, U.S. District J., sitting by designation) affirmed the district court's judgment on February 14, 2013 in a decision reported at 496 F. App'x. 997.

Counsel is unaware of any other appeal in or from the same civil action or proceeding in the lower court or body that was previously before this or any other appellate court.  Imaginal is pursuing a second case in the district court to obtain compensation for Appellants' ongoing willful infringement, yet Counsel is unaware that the second case or any case pending in this or any other court will directly affect or be directly affected by this court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

1.      Did the district court abuse its discretion in awarding prejudgment interest or in setting the rate?

      a.  Since the judgment included an award of "interest at the legal rate as provided by the law," did the district court correctly determine that the motion to set the omitted amount of interest was governed by Rule 60(a)?

      b.  Did the district court abuse its discretion in setting the rate of pre-judgment interest at 5%?

## STATEMENT OF THE CASE[1]

Pursuant to Federal Circuit Rule 28(b), Imaginal's statement includes only those issues as to which it disagrees with Appellants' Statement of the Case, or which provide further context for the issues addressed in this appeal.

The judgment entered by the district court awards "the sum of $5,000,000.00 … with interest thereon at the legal rate as provided by the law." A6. Regardless of whether the district court utilized a form, there is no support for Appellants'

---

[1]  Appellants omit the required statement of facts (Fed. Cir. Rule 28(a)(8)) and apparently include what they believe are the relevant facts in their statement of the case. Imaginal will do the same as the relevant facts are, for the most part, procedural.

implication that the district court's award of interest was not intended, as indeed confirmed in the order appealed.  A2-4.

After entry of judgment, Appellants challenged the damages evidence, jury verdict and judgment on multiple grounds through a motion for new trial or to amend the judgment and a motion for judgment as a matter of law, but did not challenge the award of interest in the Judgment.  A188-210; *see* A221-26.  As permitted under Rule 60(a), Imaginal opted to allow Appellants' numerous damages arguments to be resolved by the district court and on appeal before seeking to set the amount of interest awarded in the judgment.  The district court denied Appellants' damage challenges in their post-trial motions.  (A221-26)  Appellants appealed the Judgment, but did not challenge the award of interest in their appeal.  *See* Brief of Defendants-Appellants, *Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, No. 12-1313, ECF No. 19.  This Court affirmed the judgment in all respects.  496 F. App'x. 997.

Imaginal then filed its motion to determine the rate of pre-judgment interest that had been awarded in the Judgment.  A231-349, A386-390, A650-65.  Imaginal submitted evidence in support of its motion that, from the time of Appellants' first infringement, Imaginal was in the position of a borrower and should thus be awarded pre-judgment interest at a "borrowing" rate, rather than an "investment" rate.  A244.  Imaginal also submitted evidence of specific borrowing activity due

to the lack of revenue during Appellants' infringement, including: (1) Imaginal had to borrow money at an 8% rate, which increased to 12% because it could not timely pay the loan in full; (2) Imaginal had to enter into a contingency fee arrangement to be able to pursue its patent rights in the case, and because Imaginal did not have the capital to fund the costs associated with the litigation, Imaginal had to agree to sharing a higher percentage of its recoveries in exchange for counsel's agreement to advance (i.e., loan) those costs; and (3) Imaginal had to borrow at a premium, in excess of 7%, to cover patent maintenance fees and its own travel expenses associated with the litigation. A662-665.

Appellants opposed the motion to set the interest rate on the unsupported ground that the Judgment awards only post-judgment interest. A372. Based upon this false premise, Appellants argued that Imaginal's motion was an attempt to amend the Judgment to include an award of pre-judgment interest, which had to be made pursuant to Rule 59(e). *Id.*, A374. The district court rejected Appellants' contention that the award of interest in the Judgment was limited to post-judgment interest. A2. Contrary to Appellants' contention, the district court did not find that there was a failure to ask for prejudgment interest or that "the failure to ask for prejudgment interest was a 'clerical error.'" (*See* AOB pp. 8, 9.) The district court's reference to "clerical error" was a generic reference to Rule 60(a) and interpretive case law. A2. Nor did the district court find that "Imaginal delayed

-3-

bringing suit" (*see* AOB p. 9):  "there is no evidence that Plaintiff delayed suit as a litigation tactic.  In fact, the Court has already found that Plaintiff's delay, <u>if any</u>, was not unreasonable or inexcusable."  A4 (emphasis added).

Appellants include in their statement of the case irrelevant material concerning Imaginal's motion to award ongoing royalties in the case below.  (*See* AOB pp. 7-8.)  To the extent that information is deemed relevant, Imaginal provides the following additional context.  Imaginal learned during the pendency of the Appellants' appeal of the Judgment that Appellants were <u>continuing</u> to use the same infringing machines that had been found to infringe, without any design changes that would avoid infringement.  *See* A4.  Upon completion of the appeal, Imaginal decided to file a motion for ongoing royalties.  A2, A721-865.  Appellants opposed the motion on the grounds that it was untimely and that the Judgment reflected a fully paid-up royalty.  *See* A4-5.  The district court rejected the latter argument:  "review of the court records, including the proposed and final Jury Instructions, show no indication that royalties for ongoing use were ever at issue."  *Id.*  In so doing, the district court found, "It is undisputed that, since the jury verdict, Defendants have continued using the infringing machines to manufacture box spring mattress foundations."  A4.  Nevertheless, the district court declined to award royalties for this ongoing infringement <u>in this case</u> based

on the timing of the motion: "the Court finds imposition of ongoing royalties in the current case improper." A5.

Accordingly, Imaginal has filed a second action to recover damages for Appellants' ongoing willful infringement. *See Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, No. 13-05463-SVW (RZx) (C.D. Cal. filed July 29, 2013).

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in awarding prejudgment interest or in setting the rate of prejudgment interest. *See General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983) ("a decision to award prejudgment interest will only be set aside if it constitutes an abuse of discretion").

The judgment awarded damages "in the sum of $5,000,000.00 … with interest thereon at the legal rate as provided by the law." A6. As a threshold matter, because Appellants did not challenge the Judgment's award of interest in their first appeal, their challenge to the award of interest – if not the rate – has been waived. *See Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379 (Fed. Cir. 1999).

Regardless of any waiver, every Court of Appeal that has addressed the issue presented here – where the judgment awards interest at an unspecified rate – has determined that a motion to fix the amount of interest is governed by Federal Rule of Civil Procedure Rule 60(a), which permits a court to "correct" an omission in

the judgment – *i.e.*, the amount of the interest awarded.  *See e.g.*, *McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 679-80 (10th Cir. 1989); *Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384, 386 (6th Cir. 1998); *Kosnoski v. Howley,* 33 F.3d 376 (4th Cir. 1994).  Appellants do not dispute that, under Rule 60(a), Imaginal's motion to set the amount of interest was timely.

Appellants therefore disregard these cases and the Judgment, and base their appeal on two cases where the judgment did not award interest.  *See*, *e.g.*, Appellants' Opening Brief (*See* AOB p. 10), citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169 (1989) and *McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128 (9th Cir. 2004).  Because the judgments in those cases did not award interest, it was necessary to move to <u>amend</u> the judgments, which motions are governed by Rule 59(e).  Based on the simple and undeniable fact that the Judgment in this case awarded "interest thereon at the legal rate as provided by the law," this case is governed by *McNickle, Pogor* and *Kosnoski*, and not *Osterneck* and *McCalla.* Imaginal's motion and the district court's award of interest were timely.

Despite disregarding the most relevant authority, Appellants chide Imaginal for causing "piecemeal litigation" and "coming back for more after the check is paid." (*See* AOB pp. 1-2.)  This is truly ironic.  The Judgment awarded interest in the first place, the district court's determination of the interest rate was well within its discretion, and any purported delay did not alter the amount of interest owed.

-6-

Yet, faced with the choice between paying the full check and filing this appeal, it was Appellants, not Imaginal, that chose further litigation.  Appellants apparently miss the irony of accusing Imaginal of "piecemeal litigation" and "coming back for more after the check is paid," while at the same time refusing to pay amounts properly awarded and continuing to willfully infringe Imaginal's patents using the very same infringing machines after a final judgment of infringement and validity that has been upheld on appeal.

Appellants have also chosen to relitigate the determination of the interest rate, which was within the district court's broad discretion and which was well below rates that have been upheld by this Court.  *See General Motors*, 461 U.S. at 656-657; *Lam v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983) ("The district court may 'fix' the interest and select an award above the statutory rate, or select an award at the prime rate.")  (internal citation omitted).  The prime interest rate was 11% in 1983. http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm#current While Appellants challenge the sufficiency of the evidence submitted in support of the rate awarded, a patentee does not have to make any "affirmative demonstration, *i.e.*, proof of borrowing at or above prime" to "be entitled to an award of prejudgment interest at the prime rate."  *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-80 (Fed. Cir. 1988).  In sum, the district court's

-7-

adoption of a 5% simple interest rate was both within the district court's discretion and supported by substantial evidence.

## ARGUMENT

### I.    STANDARD OF REVIEW

"A decision to award prejudgment interest will only be set aside if it constitutes an abuse of discretion." *See General Motors Corp.v. Devex Corp*., 461 U.S. 648, 654 (1983). The abuse of discretion standard also applies to the district court's determination of the prejudgment interest rate. *Uniroyal, Inc. v. Rudkin-Wiley Corp*., 939 F.2d 1540, 1545 (Fed. Cir. 1991) ("A trial court is afforded wide latitude in the selection of interest rates").

Similarly, under Ninth Circuit law, a district court's ruling on a Rule 60(a) motion is reviewed under an abuse of discretion standard. *McNickle*, 888 F.2d at 680, citing *Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir. 1987). An example of an abuse of discretion is where the trial court fails even to consider either an applicable legal standard or the facts upon which the exercise of its discretionary judgment is based. *McNickle*, 888 F.2d at 680. Here, there was no abuse of discretion. The district court expressly considered both the applicable legal standard and the facts upon which its discretionary determination of the rate of interest is based.

## II.    THE DISTRICT COURT PROPERLY AWARDED PREJUDGMENT INTEREST IN THE JUDGMENT, AND WAS PERMITTED TO SET THE RATE PURSUANT TO RULE 60(a)

The Judgment awarded damages "in the sum of $5,000,000.00 … with interest thereon at the legal rate as provided by the law." A6. The relevant law, indeed, provides for an award of prejudgment interest: "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, . . . together with interest and costs as fixed by the court." 35 U.S.C. § 284. The Supreme Court has held that prejudgment interest should be awarded under § 284 absent some justification for withholding such an award. *General Motors*, 461 U.S. at 657. The district court has confirmed that its award of interest in the Judgment included prejudgment interest. A2.

### A.    Appellants Waived Any Right to Challenge the Award of Prejudgment Interest

In *Engel Industries, Inc. v. Lockformer Co*., 166 F.3d 1379 (Fed. Cir. 1999), this Court held:

> An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived. Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication.

*Id.* at 1385. In *Tronzo v. Biomet, Inc*., 236 F. 3d 1342 (Fed. Cir. 2001), the judgment in the first appeal included an award $7,134,000 in compensatory damages and $20 million in punitive damages. The defendant Biomet appealed the

award of compensatory damages, but did not appeal the award of punitive damages. *Id.* at 1344-45. This Court struck and remanded the compensatory damages award. On remand, the district court reduced the compensatory damages award to $520, and <u>also</u> reduced the punitive damages award to $52,000. *Id.* at 1345-46. In the second appeal, the Court held that Biomet had waived the challenge to punitive damages by failing to raise it in the first appeal, despite the harsh result – a 38,000 to 1 ratio between punitive damages and the final amount of compensatory damages. The Court held: "Biomet failed to raise this issue, clearly implicated in the initial decision of the district court, our mandate in *Tronzo I* acted to prevent Biomet from raising this issue on remand or in any future proceedings in this litigation." *Id.* at 1349.

Here, the award of interest was "clearly implicated in the initial decision of the district court" (the Judgment), but it was not challenged by Appellants in the first appeal. This Court's mandate in *Imaginal I* thus prevents Appellants from challenging the award of interest on remand or in any future proceedings in this litigation. *See Tronzo*, 236 F. 3d at 1349.[2]

---

[2]   Because the Judgment did not include the rate or amount of interest awarded, Imaginal does not contend that Appellants waived the right to challenge the interest rate.

### B.    Appellants' Motion to Set the Amount of Prejudgment Interest Is Governed by Rule 60(a)

Three courts of appeal have addressed the precise issue presented here: where a judgment awards interest "as provided by the law," but does not specify the amount of interest, is a motion to set the amount of interest governed by Rule 60(a) or Rule 59(e)?  Each of those courts has determined that the motion is governed by Rule 60(a), and may be filed at any time.

In 1989, the Supreme Court in *Osterneck v. Ernst & Whinney*, 489 U.S. 169 (1989), held that, where a judgment <u>did not</u> award interest, a post-judgment motion for discretionary prejudgment interest was governed by Rule 59(e).  That same year, the Tenth Circuit considered the application of the *Osterneck* ruling in a case where the judgment <u>did</u> include an award of interest, but did not specify the rate or amount.

In *McNickle*, the Tenth Circuit reversed a district court that thought it lacked the power to convert its award "with interest thereon as provided by law" in a final judgment into a particular amount in response to a motion made by the plaintiff following the resolution of the case on its merits on appeal.  In distinguishing the facts from those of *Osterneck*, the Tenth Circuit noted:

> By their Rule 60(a) motion, the plaintiffs essentially requested the court to insert the omitted particulars of the prejudgment interest award.  This was neither an original post-judgment request for prejudgment interest nor a request that the amount due to them be changed in any way.  Rule 60(a) specifically addresses the problem of omissions in judgments.  If

> a court's judgment states that interest is to be "according to law" but the
> rate is not specified, the court may specify, in response to a Rule 60(a)
> motion, the appropriate rate <u>at any time</u>.

*Id.* at 682 (emphasis added).

Noting the *McNickle* case, the Court of Appeals for the Fourth Circuit, in

*Kosnoski*, likewise concluded that a post-judgment motion to fix the amount of

interest where the judgment already provides for an award of interest should fall

under Rule 60(a). *Kosnoski*, 33 F.3d at 378-79. The judgment in the case included

"*any appropriate* pre-judgment and post-judgment interest at the legal rate,"

ostensibly leaving open the question of whether prejudgment interest was

"appropriate." *Id.* at 377. The court acknowledged that "if the district court's

original judgment order did not mention an award of prejudgment and

postjudgment interest, [the] later motion to fix interest clearly would be governed

by *Osterneck*." *Id*. at 378. The Fourth Circuit explained its holding as follows:

> The question is therefore whether the distinctions between this case and
> *Osterneck* are sufficient to change the result. We believe that they are.
> It is true that a motion requesting the court to fix the precise amount of
> interest previously awarded requires the court to take up the matter of
> prejudgment interest in a general sense, and prejudgment interest is a
> traditional component of the damages remedy rather than a collateral
> "cost," so that there is an initial plausibility to the suggestion that
> *Osterneck* would apply. Nevertheless, such a court does not revisit the
> merits of the question and certainly does nothing that can be called
> "reconsidering" the matter. Instead, the court is asked to perform a
> completely ministerial task....

*Id.* at 379. The court reasoned that, the motion was essentially one to correct an omission and is properly within the scope of Rule 60(a). *Id.*

Then, relying on both *McNickle* and *Kosnoski*, the Sixth Circuit in *Pogor* reached the same result. *Pogor*, 135 F.3d at 388. The judgment awarded damages "plus statutory interest and taxable costs, as allowable under law," again leaving open the question of whether interest was "allowable." *Id.* at 386. The Sixth Circuit held:

> We agree that Rule 60(a) applies under the circumstances found in this case where the language of the judgment awards interest as required by law but leaves the actual calculations for later. In this instance, a subsequent motion to set the actual amount of prejudgment interest should not be deemed an original request for interest, which is to be assigned, by the Supreme Court's reasoning in *Osterneck*, to the dominion of Rule 59(e). When a district court's original judgment does not mention an award of interest, then a later motion to fix interest would be governed by the rationale found in *Osterneck*, as the motion would amount to an original request for interest.
>
> Here, the court's original judgment explicitly included an award of statutory interest as "allowable" under Michigan law. … Thus, plaintiffs' motion to set the amount of interest did not seek to alter or amend the judgment, but simply asked the court to insert the omitted particulars of the prejudgment interest award. The method of calculating that interest was not disputed by the parties. Because Rule 60(a) contemplates the performance of such ministerial tasks in the course of supplying information omitted from judgments, we conclude that the district court properly looked to Rule 60(a) to supply the missing amount and, therefore, affirm the award of interest.

*Id.* at 388.

At least two courts in the pre-*Osterneck* period had held that similar motions to provide more specificity in a judgment are <u>not</u> governed by Rule 59(e).  Noting the "distinction between making a judgment more specific in the face of an original omission, and actually changing a term of the judgment, such as a specified rate or starting time for interest," the Fifth Circuit, in *Aldon Industries, Inc. v. Don Myers & Associates, Inc.*, 547 F.2d 924, 928 (5th Cir. 1977), remanded the case to the district court to allow it to specify the date from which interest should begin to run.  The same result, on an order awarding damages of a sum certain "plus interest thereon as provided by law," can be found in *United States v. Kenner*, 455 F.2d 1 (7th Cir. 1972).

Here, the language of the Judgment ("with interest thereon at the legal rate as provided by the law") is almost identical to the language of the judgment in *McNickle* ("with interest thereon as provided by law"), and very close to the language in *Pogor* ("plus statutory interest…as allowable under law") and *Kosnoski* ("plus any appropriate pre-judgment and post-judgment interest at the legal rate").  In each case, the judgment awarded interest, but did not specify the amount and qualified the award to what is "provided by law" or "allowable under the law" or "appropriate."  If anything, the Judgment in this case is more definitive than the judgment in the other cases, as it appears to award "interest thereon" without qualification, with the rate to be determined "as provided by law."  A6.

Appellants attempt to distinguish *McNickle*, *Pogor*, and *Kosnoski* on the ground that those cases involved situations where the award of interest was mandatory.  (*See* AOB pp. 22-24.)  That, however, was not the reason the courts in those cases declined to apply *Osterneck* and Rule 59(e).  Rather, each court relied on the fact that the underlying judgment <u>already included an award of interest as provided by law</u>.

- *McNickle*, 888 F.2d at 682:  "If a court's judgment states that interest is to be 'according to law' but the rate is not specified, the court may specify, in response to a Rule 60(a) motion, the appropriate rate at any time."

-  *Pogor*, 135 F.3d at 388:  "We agree that Rule 60(a) applies under the circumstances found in this case where the language of the judgment awards interest as required by law but leaves the actual calculations for later.  … When a district court's original judgment does not mention an award of interest, then a later motion to fix interest would be governed by the rationale found in *Osterneck*, as the motion would amount to an original request for interest."

-  *Kosnoski*, 33 F.3d at 378:  "Thus, if the district court's original judgment order did not mention an award of prejudgment and postjudgment interest, Howley's later motion to fix interest clearly would be governed by *Osterneck* and would be considered untimely filed.  In this instance, however, the order does clearly state that Howley should receive "$90,022.10 (*i.e.*, 5% of $1,800,442.00) *plus any appropriate pre-judgment and post-judgment interest at the legal rate*."  (Emphasis supplied.)  This case is thus unlike *Osterneck* because the motion to fix interest was not an initial request for interest but rather a request that the court clarify the appropriate amount of interest previously and properly awarded."

### C.    *Osterneck* and *McCalla* Do Not Apply

Faced with the holdings of *McNickle*, *Pogor*, and *Kosnoski*, Appellants

attempt to rely on *Osterneck* and *McCalla*.  These latter cases, however, do not

apply based on an essential and uncontroverted fact – the same fact relied on by the

courts in *McNickle*, *Pogor*, and *Kosnoski*.  The Judgment here, as in *McNickle*,

*Pogor*, and *Kosnoski*, provides for "interest … at the legal rate as provided by the

law."  A6.  Each of those cases found that, because the judgment included an

award of unspecified interest, *Osterneck* and Rule 59(e) do not apply.

Unlike the Judgment in this case, the district court's original judgment in

*McCalla* did not award interest.  369 F. 3d at 1133.  Six months after the Ninth

Circuit affirmed the judgment, the plaintiff moved for prejudgment interest under

Rule 60(a), which governs post judgment motions for prejudgment interest when

the original judgment allows for interest but fails to specify the precise dollar value

of interest.  *Id.* at 1134.  Because the judgment did not award interest, the Ninth

Circuit held that the motion was instead governed by Rule 59(e), which requires

motions to alter or amend a judgment to be filed within 28 days of the entry of

judgment.  *Id.* at 1134, citing *Osterneck.*

In *Osterneck*, as in *McCalla*, the original judgment did not provide for

interest; the district court had explicitly stated that the judgment "can be amended"

if the court granted a subsequent motion for prejudgment interest.  489 U.S. at 171-

72. Thus, the Supreme Court deemed the plaintiff's subsequent motion to award prejudgment interest as a motion under Rule 59(e) to alter or amend the judgment. Here, the Judgment already provided for interest, so there was no need to amend the Judgment. Indeed, Appellants' payment of post-judgment interest, the amount of which is not set forth in the Judgment, is an admission that the Judgment does not need to be amended to set the amount of interest due. (*See* AOB p. 7.)

Further, the *McCalla* court distinguished the circumstances in that case from cases where, as here, "the original judgment explicitly allows for prejudgment interest but fails to specify the precise dollar value of interest." The *McCalla* court acknowledged that, in those circumstances, motions to determine the amount of prejudgment interest are governed by Rule 60(a). 369 F.3d at 1133, *citing Pogor,* 135 F.3d 384, *Kosnoski v. Howley,* 33 F.3d 376 (4th Cir. 1994), and *McNickle,* 888 F.2d 678. Relying on dicta in *McCalla*, Appellants argue that *McNickle*, *Pogor*, and *Kosnoski* imposed a second requirement for Rule 60(a) to apply to a motion to set the amount of interest already awarded in a judgment, specifically, that the amount of interest can be calculated later with relative certainty. (*See* AOB pp. 24-25, citing *McCalla*, 369 F.3d at 1133.)

First, this characterization of *McNickle*, *Pogor*, and *Kosnoski* by the *McCalla* court is certainly dicta. Because the judgment in *McCalla* did not award interest, that fact alone distinguished the *McCalla* case from *McNickle*, *Pogor*, and

*Kosnoski*. *McCalla*, 369 F.3d at 1133. On the other hand, whether California or Nevada law applied, the amount of interest <u>could be calculated with certainty</u>, because the interest rates were set by statute. *Id.* at 1131-33. Thus, the purported second requirement of *McNickle*, *Pogor*, and *Kosnoski* did not distinguish the *McCalla* case from those cases, and the only distinction that mattered was the first one, *i.e.*, that the judgment in *McCalla* did not include an award of interest, while the judgment in those other cases did.

## D. Appellants' Additional Arguments That *Osterneck* Should Apply Are Without Merit

Appellants repeatedly allude to one of the rationale's mentioned in the *Osterneck* decision, *i.e.*, that the award of prejudgment interest may require the district court to "reexamine … matters encompassed within the merits of the underlying action." *See* AOB pp. 15-17, citing *Osterneck*, 489 U.S. at 177. That was not the case here. For example, Appellants never argued that there was "good cause" to withhold prejudgment interest under *General Motors*, and certainly never argued that any "good cause" to deny interest was based on "matters encompassed within the merits of the underlying case." *See* AOB pp. 17-18; A368-385. To the extent Appellants can be said to have <u>indirectly</u> argued good cause to deny interest, such argument was based entirely on the alleged delay, and not on the underlying merits of the case. *Id.* However, "absent prejudice to the defendants, any delay by [the patentee] does not support the denial of prejudgment interest." *Lummus*

-18-

*Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988).  Appellants

have offered no evidence of prejudice, other than broad complaints of "piecemeal

litigation."  Further, Appellants have not even argued that Imaginal's evidence

regarding its financial condition during the time of infringement required the

district court to revisit matters within the merits of the underlying case.

     Appellants appear to concede that the issue of whether prejudgment interest

is mandatory or discretionary does not affect the determination of whether

*Osterneck* applies.  (*See* AOB p. 16.)  Yet Appellants make repeated reference to

the proposition that the award of prejudgment interest in patent cases is

discretionary.  (*See* AOB pp. 10, 14, 16, 17, 27, etc.)  Regardless, the cases

addressing a motion to set the amount of interest when the judgment includes an

award of interest <u>do not</u> turn on whether the award of prejudgment interest was

mandatory or discretionary, but rather on the inclusion of interest in the original

judgment.  *See*, supra, § II.C.

     Finally, Appellants make repeated reference to the assertion that the

Judgment was created based on a form.  (*See* AOB pp. 5, 21, 27, etc.)  First, this

assertion seems to insinuate that the district court's award of interest was

unintentional or ill-considered.  It was neither, as the award of interest, including

prejudgment interest, is common or mandatory in all manner of cases, including

patent cases.  *See also* A2-4.  Second, to the extent Appellants believed the use of

the form awarding "interest thereon at the legal rate as provided by the law" was inappropriate, they should have moved to amend the judgment and/or raised that issue in the first appeal.  They did not, and therefore waived any complaint over the use of the form.  *See Engel Industries*, 166 F.3d at 1379; *Tronzo*, 236 F. 3d at 1349

## III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IS SETTING THE RATE OF INTEREST

The Supreme Court in *General Motors* held:

> The standard governing the award of prejudgment interest under § 284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation.  In light of that purpose, we conclude that prejudgment interest should ordinarily be awarded.  In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement.  An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the forgone use of the money between the time of infringement and the date of the judgment.

461 U.S. at 655-56 (footnote omitted).

As observed by the district court, "the rate of prejudgment interest and whether it should be compounded are matters left to the discretion of the trial court."  A3, citing *Bio-Rad Labs. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) ("The question of the rate at which such an award should be made is a matter left to the sound discretion of the trier of fact.")  This Court further held in *Bio-Rad* that interest should be awarded during the time royalty payments would

have been received, *i.e.*, from the time of first infringement through the date of the judgment. "An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of the infringement and the date of the judgment." *Id.* at 967. A district court's determination of these issues is reviewed only for an abuse of that discretion. *Uniroyal*, 939 F.2d at 1545 ("A trial court is afforded wide latitude in the selection of interest rates").

Appellants are incorrect that, in a patent case, "the determination of how to calculate the appropriate interest rate is governed by Ninth Circuit law." (*See* AOB pp. 30-31.) The case relied upon by Appellants, *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343 (Fed. Cir. 1999), held only that Ninth Circuit law would be applied to "determining the correct dividing line for calculating pre- and postjudgment interest." *Id.* at 1347. The Court observed that Section 284 does not address this dividing line, while 28 U.S.C. § 1961, on the other hand, does. Section 1961 is not unique to patent law, the Court reasoned, so the "dividing line" issue should be determined under regional circuit law. *Id.*

Section 284 provides: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, . . . <u>together with interest and costs as fixed by the court</u>." (Emphasis added.) Thus, the

determination of the interest rate is <u>squarely</u> within the ambit of Section 284, which is particular to patent cases: "The standard governing the award of prejudgment interest under § 284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation." *General Motors*, 461 U.S. at 655. Accordingly, the rate of prejudgment interest is determined and reviewed under Federal Circuit law, as recognized by this Court in numerous cases. *E.g.*, *Bio-Rad*, 807 F.2d at 969; *Uniroyal*, 939 F.2d at 1545 ("A trial court is afforded wide latitude in the selection of interest rates").

Appellants are, therefore, incorrect that Ninth Circuit law dictates the determination of the prejudgment interest rate in a patent case. (*See* AOB p. 33.) The Ninth Circuit's substantial evidence standard does not apply. (*Id.*, citing *W. Pac. Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984). Even if, *arguendo*, one were to apply this standard to the district court's determination in this case, the district court clearly <u>did</u> determine that the equities of the case support a rate different from the Treasury bill default rate. Specifically, the district court found that "Plaintiff suffered some detriment because it was unable to use the hypothetical royalties. ... [I]n light of evidence establishing Plaintiff's position as a borrower during the relevant time period, the Court imposes a simple 5% rate of interest." (A4.) Thus, while the district court found that Imaginal's evidence was insufficient to justify an award of 7%, it was

certainly sufficient to establish that Imaginal was in the position of a borrower, which would justify a departure from the Treasury bill rate under either Federal Circuit law or Ninth Circuit law. *See Uniroyal, Inc.*, 939 F.2d at 1545; *W. Pac. Fisheries,* 730 F.2d at 1289 ("the equities of the particular case require a different rate" to fully compensate Imaginal for the foregone use of the money between the time of the infringement and the date of the judgment).

Under the Federal Circuit standard, courts have awarded and affirmed a wide variety of prejudgment interest rates. *See Uniroyal*, 939 F.2d at 1545 ("A trial court is afforded wide latitude in the selection of interest rates"). This includes the prime rate and rates above the prime rate. *Studiengesellschaft Kohle, m.b. H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-80 (Fed. Cir. 1988) (prime rate); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983) (affirmed interest at a rate above prime); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284, 1330 (S.D. Cal. 2010) (district courts in California "have found that a simple interest rate of 7% is usually appropriate to fully compensate the plaintiff for the infringement"), citing *In re Hayes Microcomputer Prod., Inc. Patent Litig.*, 766 F. Supp. 818, 824 (N.D. Cal. 1991). Indeed, the Court does not require proof of borrowing at or above prime for a plaintiff to be entitled to an award of prejudgment interest at the prime rate. *Studiengesellschaft,* 862 F.2d at 1579-80. Notably, this aspect of the Federal Circuit rule is also flatly

inconsistent with the Ninth Circuit's substantial evidence standard espoused by Appellants. Rather, all that need be shown is that Imaginal was in the position of a borrower, not an investor, during the period of infringement. *See id*. Thus, to be adequately compensated for the "foregone use of the money [royalties] between the time of the infringement and the date of the judgment," prejudgment interest must cover the cost of borrowing money, and not the foregone return on investment monies that Imaginal did not have.

The evidence required to establish Imaginal as a borrower is minimal. In *Uniroyal*, the Court approved an award of interest at the prime rate based solely on evidence of "at least one loan" during the pendency of the litigation that carried an interest rate in excess of the prime rate. *Uniroyal*, 939 F.2d at 1545 ("Accordingly, it cannot be said that the second finding was clearly erroneous.") In *Lam*, the patent owner demonstrated and the district court found only that Lam borrowed money at or above the prime rate in order to continue its operations. *Lam*, 718 F. 2d at 1066 (district court did not abuse its discretion in awarding prejudgment interest in excess the prime rate.)

Here, Imaginal submitted evidence of specific borrowing activity due to the lack of revenue during Appellants' infringement, including: (1) Imaginal had to borrow money at an 8% rate, which increased to 12% because it could not timely pay the loan in full; (2) Imaginal had to enter into a contingency fee arrangement to

be able to pursue its patent rights in the case, and because Imaginal did not have the capital to fund the costs associated with the litigation, Imaginal had to agree to sharing a higher percentage of its recoveries in exchange for counsel's agreement to advance (*i.e.*, loan) those costs; and (3) Imaginal had to borrow at a premium, in excess of 7%, to cover patent maintenance fees and its own travel expenses associated with the litigation.  A662-665.  Again, while the district court considered this evidence insufficient to award interest at 7%, this evidence was more than sufficient to establish "at least one loan" during the pendency of the litigation that carried an interest rate in excess of the prime rate.  *See Uniroyal*, 939 F.2d at 1545.  Significantly, the prime rate ranged from 3.25% to 8.25% during the period of infringement from August 30, 2005 to January 24, 2012.  *See* http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm#current Moreover, Imaginal's evidence was far more than a "single conclusory allegation," and was certainly "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion that Imaginal was a borrower, not an investor. *See* A4; AOB pp. 33-34.  The district court was thus justified in awarding a "borrower rate" under either the applicable Federal Circuit standard or the Ninth Circuit standard.

In addition, courts have recognized that compounding interest is sometimes necessary to fully compensate the patentee.  *Fresenius Med. Care Holdings, Inc. v.*

*Baxter Int'l, Inc.*, 2008 WL 928535, at *2 (N.D. Cal. Apr. 4, 2008) (applying prime

rate), citing *AMP Inc. v. Lantrans Inc.*, 22 U.S.P.Q. 2d 1448, 1453 (C.D. Cal.

1991)).  The courts reasoned that because a patentee's damages include the

foregone use of money, compounding is needed to account for the time value of

money, and have approved annual compounding and even daily compounding.

Here, the district court awarded simple interest at the rate of 5%, with no

compounding, which substantially benefitted Appellants.

Appellants also argue that the district court incorrectly applied California

state law to its rate determination.  (AOB p. 31.)  They are incorrect.  The district

court expressly relied on *Bio-Rad*, *Uniroyal*, and *Laitram Corp. v. NEC Corp.*, 115

F.3d 947, 955 (Fed. Cir. 1997), all Federal Circuit cases applying federal law, in

making its rate determination.  This, of course, does not preclude a court from

looking to state statutory interest rates in the various states to inform the interest

rate necessary to compensate a patent owner for "foregone use of the money

between the time of the infringement and the date of the judgment."  *See Bio-Rad*,

807 F.2d at 967.

The 5% rate awarded by the district court was within the range of prime

rates during the time of infringement, reasonable, fully supported by the relevant

evidence, and well within the district court's broad discretion.

## CONCLUSION

Imaginal respectfully requests that this Court affirm the district court's award of pre-judgment interest at the rate of 5% from August 30, 2005 to January 24, 2012.

DATED:  MAY 2, 2014

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

BY   s/ *STEVEN M. HANLE*
STEVEN M. HANLE
shanle@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
(714) 513-5100

*Counsel for Appellee*
*Imaginal Systematic, LLC*

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT
IMAGINAL SYSTEM v LEGGETT & PLATT, 2013-1548

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by SHEPPARD MULLIN RICHTER & HAMPTON LLP, Attorneys for Plaintiff-Appellee to print this document. I am an employee of Counsel Press.

On **May 2, 2014**, Counsel for Plaintiff-Appellee has authorized me to electronically file the foregoing **Corrected BRIEF OF PLAINTIFF-APPELLEE IMAGINAL SYSTEMATIC, LLC** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Mark S. Parris
*Principal Counsel*
Orrick, Herrington & Sutcliffe LLP
701 5th Avenue
Suite 5700
Seattle, WA 98104
206-839-4320
mparris@orrick.com

Eric Shumsky
Susannah Weaver
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005
202-339-8400
eshumsky@orrick.com
sweaver@orrick.com

Additionally, two paper copies will be mailed to the above counsel, at the addresses noted above, at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper corrected copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.  The brief was originally filed an served on April 30, 2014

May 2, 2014                                          /s/ John C. Kruesi, Jr.
                                                     John C. Kruesi, Jr.
                                                     Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  X   The brief contains 6,562 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X   The brief has been prepared in a proportionally spaced typeface using MS Word 2013 in a 14 point Times New Roman font or

____ The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.

May 2, 2014_____          Signature(s) _/s/ Steven M. Hanle_____
                                         Steven M. Hanle
                                         *Attorney for Appellee*
                                         *Imaginal Systematic, LLC*