No. 13-1548

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

————

IMAGINAL SYSTEMATIC, LLC,

*Plaintiff-Appellee,*

— v. —

LEGGETT & PLATT, INC. AND SIMMONS BEDDING COMPANY,

*Defendants-Appellants,*

*and*

DOES 1-10, INCLUSIVE,

*Defendants.*

————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA,
CASE NO. 10-CV-7416, JUDGE R. GARY KLAUSNER

————

## REPLY BRIEF OF DEFENDANTS-APPELLANTS
## LEGGETT & PLATT, INC. AND SIMMONS BEDDING COMPANY

————

Mark S. Parris
Orrick, Herrington &
 Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104
(206) 839-4300

Eric A. Shumsky
Susannah Weaver
Orrick, Herrington & Sutcliffe
 LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ............................................................................. 1

ARGUMENT ..................................................................................... 3

   I.  IMAGINAL'S BELATED REQUEST FOR
      PREJUDGMENT INTEREST WAS NOT COGNIZABLE
      UNDER RULE 60(a) ............................................................... 3

      A.  Imaginal Did Not Seek Or Obtain Prejudgment
          Interest At The Appropriate Time. ............................. 4

      B.  In Any Event, Imaginal Sought Far More Than A
          Ministerial Correction To The Judgment. ................. 13

      C.  Imaginal's Waiver Argument Is Baseless. ................. 22

  II.  THE DISTRICT COURT'S AWARD OF PREJUDGMENT
      INTEREST IS NOT SUPPORTED BY THE EVIDENCE ............. 24

CONCLUSION ................................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accentra Inc. v. Staples, Inc.,*
   851 F. Supp. 2d 1205 (C.D. Cal. 2011)................................29

*Accentra, Inc. v. Staples, Inc.,*
   500 F. App'x. 922 (Fed. Cir. 2013) ....................................29

*Aldon Indus., Inc. v. Don Myers & Assocs., Inc.,*
   547 F.2d 924 (5th Cir. 1977) ..............................................11

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.,*
   807 F.2d 964 (Fed. Cir. 1986) ......................................30, 31

*Blankenship v. Liberty Life Assurance Co.,*
   486 F.3d 620 (9th Cir. 2007) ................................................8

*Blanton v. Anzalone,*
   813 F.2d 1574 (9th Cir. 1987) ............................................25

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.,*
   490 F.3d 718 (9th Cir. 2007) ................................................9

*Bowling v. Hasbro, Inc.,*
   403 F.3d 1373 (Fed. Cir. 2005) ..........................................18

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,*
   No. 09-290 2014, U.S. Dist. LEXIS 43042
   (W.D. Pa. Mar. 31, 2014) ...................................................29

*Crystal v. United States,*
   172 F.3d 1141 (9th Cir. 1999) ............................................27

*Gen. Motors Corp. v. Devex Corp.,*
   461 U.S. 648 (1983) ..............................................................6

*Knapp v. Ernst & Whinney,*
   90 F.3d 1431 (9th Cir. 1996) ..............................................25

iii

*Kosnoski v. Howley*,
    33 F.3d 376 (4th Cir. 1994) .......................................*passim*

*Laitram Corp. v. NEC Corp.*,
    115 F.3d 947 (Fed. Cir. 1997) ...................................30

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983) .................................31

*Li v. Holder*,
    738 F.3d 1160 (9th Cir. 2013) ...................................18

*McCalla v. Royal MacCabees Life Ins. Co.*,
    369 F.3d 1128 (9th Cir. 2004) ...............................*passim*

*McNickle v. Bankers Life & Cas. Co.*,
    888 F.2d 678 (10th Cir. 1989) ...............................*passim*

*McOmie-Gray v. Bank of Am. Home Loans*,
    667 F.3d 1325 (9th Cir. 2012) ...................................17

*Nelson v. EG & G Energy Measurements Grp.*,
    37 F.3d 1384 (9th Cir. 1994) ...................................27

*Osterneck v. Ernst & Whinney*,
    489 U.S. 169 (1989) .........................................*passim*

*Paddington Partners v. Bouchard*,
    34 F.3d 1132 (2d Cir. 1994)....................................20

*Parke v. Raley*,
    506 U.S. 20 (1992) ..............................................9

*Pogor v. Makita U.S.A., Inc.*,
    135 F.3d 384 (6th Cir. 1998) ................................*passim*

*Polar Bear Prods. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ....................................8

*SEC v. Worthen*,
    98 F.3d 480 (9th Cir. 1996) .....................................9

iv

*Transmatic, Inc. v. Gulton Indus., Inc.*,
  180 F.3d 1343 (Fed. Cir. 1999) ...........................................28

*Traxler v. Multnomah Cnty.*,
  596 F.3d 1007 (9th Cir. 2010) ...............................................8

*Tronzo v. Biomet, Inc.*,
  236 F.3d 1342 (Fed. Cir. 2001) ....................................23, 24

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
  939 F.2d 1540 (Fed. Cir. 1991) .........................................30

*United Nat'l Ins. Co. v. R & D Latex Corp.*,
  141 F.3d 916 (9th Cir. 1998) .................................................8

*United States v. Great Am. Ins. Co.*,
  738 F.3d 1320 (Fed. Cir. 2013) .........................................17

*United States v. Kellogg (In re West Texas Mktg. Corp.)*,
  12 F.3d 497 (5th Cir. 1994) ................................................14

*United States v. Kenner*,
  455 F.2d 1 (7th Cir. 1972) .................................................11

*W. Pac. Fisheries, Inc. v. S.S. President Grant*,
  730 F.2d 1280 (9th Cir. 1984) ...........................................25

**Statutes**

28 U.S.C. § 1961 ........................................................................6

35 U.S.C. § 284 ......................................................................28

**Rules**

Fed. R. Civ. P. 59 ...........................................................4, 10, 22

Fed. R. Civ. P. 60 ........................................................... passim

**Other**

11 Charles A. Wright et al., *Federal Practice
  and Procedure* (2012) ................................................14, 15

# INTRODUCTION

For all that it does say, Imaginal does not dispute the most essential fact underlying this appeal—that it did not request prejudgment interest until some 18 months after judgment had been entered. Nor does Imaginal dispute that it could have sought this relief long before, but simply did not, whether for strategic reasons or through inadvertence. Had Imaginal done so, this litigation would long since be over, and the parties would not be back before this Court for this unnecessary, second round of appeals. Imaginal's belated request makes a mockery of the final judgment rule and the strong presumption against piecemeal appeals, and this Court should reject it.

Federal Rule of Civil Procedure 60(a)—which authorizes a district court to correct clerical mistakes—did not empower the district court to reopen the judgment to assess for the first time whether prejudgment interest should be awarded, and if so, in what amount. Imaginal itself acknowledges that, if the original judgment did not award prejudgment interest, then Rule 60(a) is inapplicable. Instead, Imaginal asserts that the judgment's boilerplate, unelaborated reference to "interest … at the legal rate as provided by the law" in fact meant to assess prejudgment

interest—notwithstanding that Imaginal did not move for prejudgment interest; the parties never briefed it; and the court never assessed or explained until long thereafter whether such interest ought to be awarded, and if so, how much. To accept Imaginal's theory means treating the Central District of California's stock judgment form as awarding discretionary prejudgment interest in <u>every</u> case (not just patent cases); and it would require this Court to assume that the court awarded such interest without reasoned explanation, contrary to Ninth Circuit law. That is assuredly not the best reading of the order or of the proceedings below.

Moreover, even if the judgment had awarded prejudgment interest, Imaginal's motion still was untimely, because Rule 60(a) was not a proper mechanism to determine for the first time the proper rate and time period for the interest calculation. Imaginal's late-filed motion—in which it asked the district court to fix the rate of prejudgment interest—went far beyond correcting a ministerial error, which is what Rule 60(a) allows. Instead, the motion called on the court to assess newly introduced (but previously available) evidence of Imaginal's borrowing and investment habits during the prejudgment period, and to make

substantive judgments about how high the interest rate should be and when the interest clock should run—matters that the parties vigorously disputed. These are precisely the sorts of determinations that the Supreme Court in *Osterneck* held to be intertwined with the merits of a plaintiff's underlying claims. For that reason, they must be addressed at the same time those claims are resolved.

The January 2012 judgment has long since been satisfied, and the litigation is properly at a close. It is too late for Imaginal to come back for more. The order awarding prejudgment interest should be reversed.

## ARGUMENT

## I. IMAGINAL'S BELATED REQUEST FOR PREJUDGMENT INTEREST WAS NOT COGNIZABLE UNDER RULE 60(a).

Imaginal's argument boils down to this: (a) because the judgment included a generic reference to "interest," it necessarily awarded Imaginal discretionary prejudgment interest; and (b) Imaginal therefore was entitled to ask the district court to set prejudgment interest at any time under Rule 60(a). The argument fails at both steps. *First*, the judgment's boilerplate reference to "interest" cannot be read to include an award of discretionary prejudgment interest that Imaginal never requested and the district court never discussed. *Second*, even if the

judgment did "include[] an award of unspecified [prejudgment] interest," RedBr.16, the task of determining the proper interest rate and the period for which interest may be awarded goes well beyond the sort of error correction that Rule 60(a) permits.[1]

### A. Imaginal Did Not Seek Or Obtain Prejudgment Interest At The Appropriate Time.

1. Because the January 2012 judgment did not award discretionary prejudgment interest, Imaginal's June 2013 motion to "determine the amount of prejudgment interest," A231, was not cognizable under Rule 60(a). Rather, it was an untimely motion to alter or amend the district court's judgment under Rule 59(e). *See* BlueBr.13-20. That is clear from the Supreme Court's decision in *Osterneck*, and the Ninth Circuit's decision in *McCalla*. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989) ("[A] postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment

---

[1] Imaginal's brief erroneously suggests that the district court's decision to entertain Imaginal's Rule 60(a) motion "is reviewed under an abuse of discretion standard." RedBr.8. While a district court's substantive resolution of a Rule 60(a) motion is generally reviewable only for abuse of discretion, the preliminary question of whether a motion is even cognizable under Rule 60(a) is a "purely legal question[]" and is thus "reviewed do novo." *McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1129 (9th Cir. 2004).

under Rule 59(e)."); *McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1130-31 (9th Cir. 2004).

Notably, Imaginal does not deny that it cannot win unless the January 2012 judgment is construed as having awarded discretionary prejudgment interest. Thus, Imaginal devotes the bulk of its brief to arguing that the judgment should be read to have awarded such interest. *E.g.*, RedBr.11-18. In particular, Imaginal focuses on the fact that the district court's preprinted judgment form includes the stock phrase "with interest thereon at the legal rate as provided by the law." RedBr.14. That boilerplate language, Imaginal insists, necessarily awards both postjudgment and prejudgment interest. But there is no good reason to think that that language means to encompass discretionary prejudgment interest, and very good reasons to think that it does not.

*First*, as an initial matter—and as Imaginal must acknowledge—postjudgment and prejudgment interest stand on different footing. Postjudgment interest is mandatory and automatic. The rate is specified by statute, as is the date when the interest begins to run: "Such interest shall be calculated from the date of the entry of the judgment, at

a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). In contrast, prejudgment interest is often discretionary, with rates and time frames that are the product of judicial findings rather than statutory definitions. *Cf.* RedBr.20 (accepting that prejudgment interest determinations are discretionary). Here, for instance, the district court must decide whether such interest is "necessary to afford the plaintiff full compensation for infringement," and it must determine, without specific statutory guidance, what interest rate is appropriate and when the clock should start to run. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983).

Because prejudgment interest awards like this one require case-specific discretionary analysis, they are not the sort of awards that can or should be imputed from boilerplate language on a stock judgment form. When a court uses a preprinted form that automatically awards "interest" "at the legal rate as provided by the law," that language must be referring exclusively to postjudgment interest and not to discretionary prejudgment interest. After all, only postjudgment interest has a

6

defined "legal rate" in every case (i.e., the rate established under 28 U.S.C. § 1961, which applies even in diversity actions), which presumably is why the form uses the direct article and the singular "rate" instead of "rates"—"*the* legal rate." The form therefore should not be read to award multiple types of interest at distinct rates, at least when one of those rates is the product of adjudication rather than statutory command.

*Second*, if Imaginal's argument were adopted, it would have broad and troubling implications. It would mean that every time a district court judgment—whether preprinted or not—refers generically to "interest," the court will be deemed to have awarded not only mandatory postjudgment interest, but also discretionary prejudgment interest. Because Rule 60(a) contains no time limits, prevailing parties would be able to make such claims at any time, even years after the judgment was entered (which, of course, is precisely what occurred here). And a party could do so even if it never explicitly requested prejudgment interest, and even if (as here) the record gives no indication that the district court ever considered prejudgment interest before entering judgment. This would be a recipe for gamesmanship and seriatim appeals

7

in every context in which discretionary prejudgment interest is available. *Cf., e.g.*, *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627-28 (9th Cir. 2007) (discretionary prejudgment interest is available under ERISA); *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 718 (9th Cir. 2004) (discretionary prejudgment interest is available in copyright cases).

*Third*, if Imaginal were correct—that the original judgment must be treated as encompassing prejudgment interest—then that would mean that the district court made an award of discretionary prejudgment interest without having given any reasoned explanation (indeed, any reason at all) for having done so. But when courts exercise their discretion, they generally say so, which is what the Ninth Circuit requires them to do. The Ninth Circuit has stressed "the importance of having a reasoned decision" from a district court so that it can "ascertain how the district court exercised its discretion." *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1015 (9th Cir. 2010); *see also United Nat'l Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 919 (9th Cir. 1998) ("[M]eaningful appellate review for abuse of discretion is foreclosed when the district court fails to articulate its reasoning."). Accepting

8

Imaginal's argument means concluding that the district court awarded prejudgment interest in January 2012 without providing any "basis upon which to evaluate its exercise of discretion"—contrary to Ninth Circuit law. *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 725 (9th Cir. 2007). Ascribing that error to the court is unnecessary, and would stand directly at odds with the "'presumption of regularity' [that] is accorded to the proceedings leading to the district court's final judgment"—a presumption "'deeply rooted in our jurisprudence.'" *SEC v. Worthen*, 98 F.3d 480, 483 (9th Cir. 1996) (quoting *Parke v. Raley*, 506 U.S. 20, 29 (1992)).

It would be particularly inappropriate in this case to construe the judgment's formulaic reference to "interest" as encompassing discretionary prejudgment interest. That is because after the jury found infringement and awarded damages, Imaginal did not even ask the court to award prejudgment interest. Nor did the district court ask the parties for their positions on the question, and it gave no indication that it was making a discretionary decision to grant such relief. Indeed, the district court's subsequent ruling on Imaginal's motion helps to confirm that the court did not have prejudgment interest in mind at the time it

issued the judgment. *See* BlueBr.9, 30-38. The court did not profess to have analyzed Imaginal's entitlement to prejudgment interest when it entered judgment in January 2012. Rather, the court simply declared that the judgment's use of the phrase "interest thereon at the legal rate as provided by law" should be read to include discretionary prejudgment interest since it is something for which "the law provides." A2-3. But if the district court did not actually analyze the question until later—and tellingly, the court did not claim otherwise—then it was not making a mere ministerial correction to the judgment pursuant to Rule 60(a); it was altering and expanding the judgment outside the time limits set forth in Rule 59(e).[2]

2. To avoid this outcome, Imaginal points to three cases: *McNickle v. Bankers Life & Casualty Co.*, 888 F.2d 678 (10th Cir. 1989); *Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384 (6th Cir. 1998); and *Kosnoski v.*

---

[2] Imaginal asserts that if Defendants believed it "was inappropriate" for the district court to use a boilerplate judgment form, they should have challenged the form's use sooner. RedBr.19-20. Defendants' objection, however, is not to the form in general, which is perfectly appropriate for its limited, intended purpose. The objection is to Imaginal's attempt, 18 months after judgment was entered, to read into the form an award of prejudgment interest that Imaginal never requested at the time.

*Howley*, 33 F.3d 376 (4th Cir. 1994).[3]  Imaginal says that the judgments in those cases and this one contain similar language, and that if those courts construed that language to include prejudgment interest, then the same result should follow here.  *See* RedBr.14-15.  Imaginal criticizes Defendants for "disregard[ing] these cases," RedBr.6.  Far from having disregarded them, Defendants explained at length why those cases, read in light of *Osterneck* and as interpreted by *McCalla*, actually support Defendants rather than Imaginal.  BlueBr.21-30.

What was critical in those cases was not the language of the judgments, but the circumstances surrounding the award of prejudgment interest.  For instance, *McNickle* involved the application of an Oklahoma law that not only made prejudgment interest mandatory, but also specified the interest rate and starting date.  *See* 888 F.2d at 680-81.  Under those circumstances, the judgment's "generic reference to in-

---

[3] Imaginal also cites (RedBr.14) two pre-*Osterneck* appellate decisions—*Aldon Indus., Inc. v. Don Myers & Assocs., Inc.*, 547 F.2d 924 (5th Cir. 1977), and *United States v. Kenner*, 455 F.2d 1 (7th Cir. 1972).  Even if these cases were not outdated, they merely set forth the basic proposition that while Rule 60(a) may permit a court to make its judgment "more specific," the Rule does not authorize courts to "chang[e] a term of the judgment."  *E.g.*, *Aldon*, 547 F.2d at 928.

terest" obviously had to "encompass[] all interest, both pre- and post-judgment." *Id.* at 681. The prevailing party was entitled to both types of interest as a matter of right, so a contrary reading would mean concluding that the district court failed to do what the law required. The exact opposite is true here: Reading this boilerplate judgment to make a *sua sponte* and *sub silentio* discretionary award of prejudgment interest would be contrary to the expectation that district courts do not engage in unrequested and surreptitious exercises of discretion.

*Pogor* is like *McNickle* in this regard. It involved Michigan statutes that mandated prejudgment interest, and a judgment that awarded "statutory interest … as allowable by law." 135 F.3d at 386 & n.1. Because prejudgment interest was mandatory, it would have defied the presumption of regularity to hold that the judgment's award of "statutory interest" referred only to postjudgment interest. *Id.* at 388. And in *Kosnoski*, the state statute not only made prejudgment interest mandatory; the judgment also *expressly* awarded both "pre-judgment and post-judgment interest at the legal rate." 33 F.3d at 377, 380.[4]

---

[4] Imaginal insists that the courts in these cases did not focus on the fact that "the award of interest was mandatory." RedBr.15. But that was

In short, the January 2012 judgment is not properly read as having awarded prejudgment interest. Rather, as in *Osterneck* and *McCalla*, "[t]he judgment was silent as to prejudgment interest." *McCalla*, 369 F.3d at 1129. Therefore, because the judgment did not "explicitly allow[] for prejudgment interest," *id.* at 1133, Imaginal's attempt to obtain such interest through a Rule 60(a) motion fails at the outset.

## B. In Any Event, Imaginal Sought Far More Than A Ministerial Correction To The Judgment.

Imaginal's postjudgment motion for prejudgment interest also fails for a second, independent reason: Even if the original judgment did award prejudgment interest, it did not fix an interest rate or time period, and Rule 60(a) does not authorize the sort of proceedings necessary to set the award—for reasons that this very case illustrates. Imaginal glosses over this second problem. It conveys the impression that, if the January 2012 judgment awarded prejudgment interest, then Imag-

---

precisely why it was reasonable to read the judgments' unadorned references to "interest" as awarding both postjudgment and prejudgment interest. That, combined with the ministerial task of calculating interest in those cases, *see infra* Section I.B, made Rule 60(a) an appropriate vehicle.

13

inal had free rein under Rule 60(a) to have the award quantified at the time and in the manner of its choosing. *See, e.g.*, RedBr.16-17. That is simply not the case. Imaginal could properly invoke Rule 60(a) only if it was seeking a ministerial correction to or clarification of the judgment. Instead, Imaginal's postjudgment motion to determine prejudgment interest sought relief far in excess of what Rule 60(a) allows.

1. Rule 60(a) does not open the door to wide-ranging postjudgment proceedings. It is a limited mechanism for correcting ministerial mistakes and omissions—errors that are so obvious and uncontroversial that "by definition [they] should not generate appeals." *McCalla*, 369 F.3d at 1133; *see also United States v. Kellogg* (*In re West Texas Mktg. Corp.*), 12 F.3d 497, 505 (5th Cir. 1994) ("If … cerebration or research into the law or planetary excursions into facts is required, Rule 60(a) will not be available …. It is only mindless and mechanistic mistakes, minor shifting of facts, and no new additional legal perambulations which are reachable through Rule 60(a)."); 11 Charles A. Wright et al., *Federal Practice and Procedure* § 2851, at 287 (2012) (Rule 60(a) merely "restates the ancient principle that clerical mistakes may be corrected at any time."). When a party wants a court to modify a judgment to

14

take account of new legal or factual analysis, it must proceed not under Rule 60(a), but under Rule 59(e) or Rule 60(b), and within the time limits set by those rules. 11 Wright et al. § 2854, at 302.

*McNickle*, *Pogor*, and *Kosnoski*—the cases upon which Imaginal relies—all recognize this important limitation on Rule 60(a). When those courts assessed whether the postjudgment motions had been properly brought under Rule 60(a), they did not just consider whether the original judgments awarded prejudgment interest; they also evaluated whether the postjudgment motion to assess interest would entail a purely ministerial calculation. And, in each case, the assessment indeed was ministerial, whether because of mandatory interest, a statutory interest rate, the parties' agreement, or a combination of each. None of the courts had to examine new evidence, make a new legal or factual determination, or engage in any exercise of discretion. *McNickle* put it directly: "A correction under Rule 60(a) should require no additional proof." 888 F.2d at 682; *see also id.* at 680 n.1, 681 (explaining that the state prejudgment interest statute "establishe[d] the interest period" and specified the interest rate). The district court just needed to do the math.

The prejudgment interest statute in *Kosnoski* was similarly specific, such that the district court was merely "asked to perform a completely ministerial task by plugging the time period, the interest rate and the judgment amount into a preset formula and announcing the result." 33 F.3d at 379. *Kosnoski* thus repeatedly stressed "the ministerial nature of the court's responsibility." *Id.*; *see also id.* ("The court's only task was to do the calculation and make the amount official."); *id.* ("The task required of the court was completely ministerial, and involved the mere application of a series of facts previously determined to a set formula[.]"). For its part, *Pogor* quoted this language from *Kosnoski* and concluded that the applicable prejudgment interest statute made the district court's task equally ministerial: "The method of calculating [the amount of] interest was not disputed by the parties"; the court merely had to perform "the actual calculations." 135 F.3d at 388.

2. Importantly for present purposes, this is how the Ninth Circuit understands those cases, and it is the line that the Ninth Circuit has adopted as its own. *See* BlueBr.24-25. *McCalla* explains that the ministerial nature of the interest calculations in *McNickle*, *Pogor*, and *Kosnoski* was the reason they came out the way they did. Those cases all

16

involved what amounted to a "clerical error," and the district courts merely had to "calculate the proper amount of interest." *McCalla*, 369 F.3d at 1133. In contrast, when a postjudgment motion for prejudgment interest presents more than "ministerial matter[s]," this Court and others have refused to grant relief. *United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1327 (Fed. Cir. 2013).

Imaginal does not dispute that *McNickle*, *Pogor*, and *Kosnoski* highlighted the ministerial nature of the interest determinations, and that *McCalla* treated this fact as crucial to the outcome of those cases. Instead, Imaginal asserts that *McCalla*'s discussion was "dicta" because, it says, the judgment in *McCalla* rested solely on the fact that the original judgment in that case "did not award [prejudgment] interest" at all. RedBr.17. But *McCalla*'s discussion of the ministerial nature of the calculations was vital to the resolution of the case, and cannot properly be disregarded under circuit precedent. *See McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1329 (9th Cir. 2012) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of wheth-

er doing so is necessary in some strict logical sense.") (internal quotation marks omitted).

The critical discussion in *McCalla* responded directly to the appellant's argument that, whatever the terms of the judgment, he was entitled to seek prejudgment interest pursuant to Rule 60(a) because his motion merely renewed a prior request for such interest. The Ninth Circuit explained that the argument failed because the appellant was seeking something more than the sort of "clerical error" correction that Rule 60(a) authorizes. 369 F.3d at 1133. In any event, even if this portion of *McCalla* were dicta, there is no basis to disregard it. For non-patent-specific issues, this Court seeks to assess how the regional circuit would rule, *see, e.g.*, *Bowling v. Hasbro, Inc.*, 403 F.3d 1373, 1376 (Fed. Cir. 2005), and in the Ninth Circuit, "[w]ell-reasoned dicta is the law of the circuit," *Li v. Holder*, 738 F.3d 1160, 1165 n.2 (9th Cir. 2013).

And, most fundamentally, *McCalla* had matters exactly right. As these cases all recognize, Rule 60(a) provides a vehicle for district courts to make ministerial calculations; it does not give parties and courts license to flout the final judgment rule by conducting substantial new postjudgment proceedings.

3.   Here, Imaginal sought something through its postjudgment motion that was worlds apart from the ministerial calculations at issue in *McNickle*, *Pogor*, and *Kosnoski*.  Imaginal says little to dispute this, because it cannot.  Unlike in *McNickle*, *Pogor*, and *Kosnoski*, here the prejudgment interest rate and starting date were not specified by statute, and the parties vigorously contested them.  Indeed, Imaginal acknowledges that it asked the district court to do far more than plug numbers into a preset formula—it had to ask the district court to "determine the [appropriate] rate of pre-judgment interest," which in turn required Imaginal to "submit[] evidence" about its financial position, including its "borrowing activity."  RedBr.2.  Imaginal hoped to convince the court to exercise its discretion to assess interest "at a 'borrowing' rate, rather than an 'investment' rate."  *Id.* at 2-3; *see also* A3 (noting that "[t]he rate of prejudgment interest and whether it should be compounded are matters left to the discretion of the trial court").[5]  The district court then had to decide when the clock on any prejudgment inter-

_____

[5] None of this evidence was newly discovered, and Imaginal could easily have submitted it when the district court entered judgment in January 2012, before the first appeal to this Court.  For whatever reason, it simply did not do so.

est should start to run. Defendants contended that no prejudgment interest should accrue during the time Imaginal delayed bringing suit; Imaginal disagreed. *See, e.g.*, A4; *compare Kosnoski*, 33 F.3d at 379 (approving use of Rule 60(a) where "both parties understood the time frame for computation"), *with Paddington Partners v. Bouchard*, 34 F.3d 1132, 1141 (2d Cir. 1994) (disapproving use of Rule 60(a) where the district court could not grant relief "without [making] a finding of fact regarding the dates from which such interest should run").

Imaginal insists that none of these determinations "require[d] the district court to 'reexamine … matters encompassed within the merits of the underlying action.'" RedBr.18 (quoting *Osterneck*, 489 U.S. at 176). Imaginal's argument fails both legally and factually. As a legal matter, *Osterneck* and *McCalla* make clear that "the merits" of the action encompass not only "liability," but also "damages," *Osterneck*, 489 U.S. at 177, including specifically prejudgment interest. *Id.* at 175-76 (because prejudgment interest is "considered part of the compensation due plaintiff," a court called upon to decide "how much prejudgment interest should be granted" unavoidably "must examine … matters encompassed within the merits," at least when the interest determination

20

is discretionary); *see also McCalla*, 369 F.3d at 1130. Imaginal disregards this settled law.

As a factual matter, Imaginal's motion plainly required the district court to consider just the sorts of matters that *Osterneck* deemed to be "encompassed within the merits of the underlying action." 489 U.S. at 176. As examples of merits-related matters, *Osterneck* identified "the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness" (such as the extent to which prejudgment interest is needed to provide "full[]" compensation in light of the damages already awarded). *Id.*; *see also McCalla*, 369 F.3d at 1130. And here, these are precisely the matters that Imaginal called on the district court to examine. The district court assessed Imaginal's arguments about its borrowing and investment history, *see* A3-4 (and Imaginal now asks this Court to make that same assessment, *see* RedBr.23-26). The district court also had to determine the time period during which interest accrued—specifically, whether to award interest during the period when Imaginal had delayed bringing suit. *See* A4. Notably, the arguments concerning delay echoed arguments on the mer-

its that were made throughout the litigation, including that Imaginal's suit was barred by laches. *See, e.g.*, A215-16.

Because Imaginal's postjudgment request to determine prejudgment interest was not "wholly separate from" or "wholly collateral to" Imaginal's underlying cause of action, that request was required to be made in a timely Rule 59(e) motion, not in a Rule 60(a) motion some 18 months after the entry of final judgment. *Osterneck*, 489 U.S. at 175-76 (internal quotation marks omitted).[6] For this reason too, the award of prejudgment interest must be reversed.

## C. Imaginal's Waiver Argument Is Baseless.

Finally, Imaginal argues that Defendants waived their right to challenge the prejudgment interest award because, Imaginal says, the

---

[6] Imaginal asserts that "Appellants' payment of postjudgment interest, the amount of which is not set forth in the Judgment," somehow constitutes "an admission that the Judgment does not need to be amended to set the amount of interest due." RedBr.17. On the contrary, that payment underscores the difference between interest that can be measured through a simple mathematical calculation (here, the mandatory postjudgment interest) and interest that cannot be so easily determined (the discretionary prejudgment interest). The former runs from the date of judgment at a defined statutory rate, and thus can be easily determined by running the numbers. The latter cannot be determined until a court decides in its discretion what the starting date and interest rate ought to be.

January 2012 judgment awarded prejudgment interest. Thus, it argues, Defendants had to challenge the award in the prior appeal. RedBr.10. But this argument is utterly question-begging—it presupposes that Imaginal is right that the January 2012 judgment awarded prejudgment interest (which it did not, *see supra* Section I.A). If Defendants are correct that the judgment did *not* award prejudgment interest, then there is no waiver. And even if the judgment did award prejudgment interest, certainly there was no waiver of Defendants' further argument that Imaginal's request for non-ministerial relief was nevertheless untimely—because Imaginal did not even file its Rule 60(a) motion until after the first appeal.

Imaginal invokes *Tronzo v. Biomet, Inc.*, 236 F.3d 1342 (Fed. Cir. 2001), but that decision is not to the contrary. The district court in *Tronzo* issued a judgment that unambiguously awarded both compensatory and punitive damages, and set a specific dollar value for each. *Id.* at 1344-45. On appeal, the defendants challenged only the compensatory damages. This Court reversed and remanded. *Id.* at 1345. On remand, the district court reduced the compensatory damages in accordance with this Court's ruling, then also reduced the punitive damages

23

award that had not been appealed. *Id*. In a second appeal, this Court held that the district court should have left the punitive damages award untouched because the defendants had not challenged it in the first appeal. *Id*. at 1347-48.

The distinction between this case and *Tronzo* is obvious: The district court's initial judgment here did *not* award prejudgment interest, and certainly not unambiguously, and it did not specify an interest rate or an amount such that an appeal could sensibly have been brought. It was only *after* the first appeal was resolved—and *after* Defendants satisfied the judgment by paying Imaginal the damages award plus postjudgment interest—that Imaginal filed a motion taking the position that the judgment also entitled it to prejudgment interest. And only then was an interest rate set. It is because of Imaginal's own dilatory conduct that this appeal is the first opportunity to challenge the award of prejudgment interest.

## II.   THE DISTRICT COURT'S AWARD OF PREJUDGMENT INTEREST IS NOT SUPPORTED BY THE EVIDENCE.

Even if Imaginal's postjudgment motion for prejudgment interest had not been grossly untimely, the district court abused its discretion when it set the interest rate at 5%. As Defendants explained in their

opening brief (at 30-39), the 5% interest rate lacked any reasonable evidentiary basis.  When a case arises under federal law, the baseline "for fixing the rate of prejudgment interest" is the same as "the measure … prescribed for post-judgment interest in 28 U.S.C. § 1961"—i.e., the Treasury bill rate.  *W. Pac. Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984); *see also* Federal Reserve Board, 1-Year Constant Maturity Treasury Rates; A380-81.  The Ninth Circuit "has a strong policy in favor of the Treasury bill rate," *Blanton v. Anzalone*, 813 F.2d 1574, 1576 (9th Cir. 1987), the use of which avoids the speculation otherwise involved in guessing how a plaintiff would have invested the money, *see Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1441 (9th Cir. 1996).

What is most telling about Imaginal's response is what it no longer contests.  In the proceedings below, Imaginal urged the district court to apply the 7% default rate imposed by California state law rather than the Treasury bill rate that is the federal baseline.  *See* A234.  Imaginal now has abandoned that argument, going so far as to contend that the district court indeed applied *federal* law, despite what Imaginal urged the court to do.  *E.g.*, RedBr.26.  This turnabout comes too late.

The district court framed its inquiry around the permissibility of a 7% rate, from which it departed only slightly to accept 5% as a compromise, rather than beginning with the Treasury bill rate that is the proper baseline. *See* BlueBr.31-32.

Equally telling is that Imaginal also seems to concede that the sole evidence relied upon by the district court was not enough to uphold the 5% interest rate. As Defendants explained previously (BlueBr.36), the district court is best read as having declined to rely on nearly all of Imaginal's evidence, which the court properly viewed as "overly general." A4.[7] But now on appeal, Imaginal seeks to resurrect the evidence that the district court found wanting. *See* RedBr.24-25 (pointing to three different categories of "specific borrowing activity"). And it is with good reason that Imaginal abandons the district court's reasoning in the course of appearing to defend it: the one piece of Imaginal's evidence upon which the court did rely was not remotely sufficient to show that

---

[7] If the district court did rely on that other evidence, that reliance would be reversible error. The other evidence is the same sort of "conclusory" and "summary" evidence that the Ninth Circuit has held insufficient to support prejudgment interest. *See* BlueBr.38 (discussing this evidence and citing cases).

the equities "require[d]" an award over and above the Treasury rate. *Nelson v. EG & G Energy Measurements Grp.*, 37 F.3d 1384, 1391 (9th Cir. 1994); *see also Crystal v. United States*, 172 F.3d 1141, 1148 n.11 (9th Cir. 1999) ("conclusory" statements are "not substantial evidence").

Imaginal's "only specific evidence" indicated that Imaginal borrowed "a relatively small amount of funds … in June 2004, at a rate of 8% (which then increased to 12%)." A4. The district court agreed that this evidence failed to support Imaginal's requested 7% interest rate but decided, without meaningful explanation, that this loan justified a 5% rate. *Id.* As Defendants explained in their opening brief, the court's math simply does not add up. The loan Imaginal identified was for $50,000, a fraction of the damages award in this case. And Imaginal does not dispute that the total interest on that loan amounted to only about $38,000. *See* BlueBr.37 & n.8. By setting the interest rate at 5% on the entire judgment for the entire prejudgment period, the district court awarded Imaginal at least $300,000 more than the Treasury bill rate would have yielded. *Id.*

Imaginal makes no attempt to defend the district court's fuzzy math. Instead, as noted above, Imaginal seeks to have this Court con-

sider evidence that the district court did not. In addition, while now accepting that federal law governs here, Imaginal argues that because this is "a patent case," the assessment of prejudgment interest is governed by Federal Circuit rather than Ninth Circuit law. RedBr.21. And, Imaginal says, Federal Circuit law gives district courts broader leeway than the Ninth Circuit to depart from the Treasury bill rate. *Id.* at 22-24. In particular, Imaginal contends that its evidence—that it borrowed at least some money during the relevant period—sufficed under Federal Circuit law to support a 5% interest rate. *Id.* at 24-25.[8]

Imaginal is incorrect about the applicable law. Because the calculation of interest does not involve patent-specific analysis, the guiding standards come from regional circuit law. That was the conclusion this Court reached in *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343 (Fed. Cir. 1999). This Court explained that, while it is a patent statute (35 U.S.C. § 284) that generally authorizes "damages and interest as a

---

[8] Imaginal also argues that the award of interest was not overly generous because the court "awarded simple interest … with no compounding." RedBr.26. But the failure to award compound interest was not, as Imaginal now suggests, part of a Solomonic compromise; the court did not award compound interest because Imaginal's postjudgment motion for prejudgment interest did not ask for it. *See* A233-37.

remedy for patent infringement," the task of calculating interest is not "unique to patent law," and "the patent laws do not determine" the specific contours of interest awards. *Id.* at 1347. "Many other areas of law besides patent law" provide for interest awards, both prejudgment and postjudgment, and in all of these contexts, "the rationale for awarding interest to successful plaintiffs" is the same—namely, to provide "compensation for the use or forbearance of money owed." *Id.*; *see also id.* at 1347-48 (the function of prejudgment interest is the same, "[n]o matter what area of law is considered"). Accordingly, when district courts are called upon to make interest determinations, regional circuit precedent provides the relevant guidance. That is why, citing *Transmatic*, district courts routinely apply regional circuit law when determining prejudgment interest.[9]

---

[9] *See, e.g.*, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290, 2014 U.S. Dist. LEXIS 43042, at *20 (W.D. Pa. Mar. 31, 2014) ("Because the award of prejudgment interest is not unique to patent law, it is determined under the law of the regional circuit[.]"); *Accentra Inc. v. Staples, Inc.*, 851 F. Supp. 2d 1205, 1241 (C.D. Cal. 2011) ("In determining the applicable interest rate, the Court applies Ninth Circuit law."), *vacated in part on other grounds by Accentra, Inc. v. Staples, Inc.*, 500 F. App'x 922 (Fed. Cir. 2013).

None of the cases cited by Imaginal (at 20-26) holds otherwise. Imaginal's cases all pre-date *Transmatic*, and none even mentions the choice-of-law issue. *See, e.g.*, *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991); *Bio-Rad Labs. v. Nicolet Instrument Corp.*, 807 F.3d 964 (Fed. Cir. 1986). Rather, those cases merely state the uncontroversial proposition that prejudgment interest awards "are reviewed for abuse of discretion." *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997), *cited at* RedBr.26. Under *Transmatic*, the legal principles that inform whether the district court appropriately exercised its discretion are drawn from regional circuit law.[10]

But at the end of the day, this dispute is largely academic—because even if this Court were guided solely by the pre-*Transmatic* cases cited by Imaginal, the district court's analysis still does not withstand scrutiny. Under those cases, a prevailing party must "affirmatively demonstrate[]" that a rate above the federal baseline is justified.

---

[10] The fact that the parties dispute not just the evidentiary support for the prejudgment interest award, but also the very law used to assess the evidence, underscores that the prejudgment interest determination was a far cry from the sort of ministerial error correction authorized by Rule 60(a). *See supra* Part I.

*Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983). If the logic behind a prejudgment interest award is "difficult to comprehend," it cannot be upheld. *Bio-Rad Labs.*, 807 F.2d at 968. Here, the district court's 5% figure bears no meaningful relationship to the one piece of evidence that the district court credited (namely, that Imaginal took out one small loan during the prejudgment period)—which presumably is why Imaginal seeks to rely on evidence that the district court did not. Accordingly, even if Imaginal's motion were not grossly untimely, the award of prejudgment interest must be vacated because Imaginal has not shown its entitlement to an award in excess of the baseline, Treasury bill rate.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

<div style="text-align:right">Respectfully submitted,</div>

Date: June 2, 2014          By: /s/ *Eric A. Shumsky*

<div style="margin-left:40%">

Eric A. Shumsky
Susannah Weaver
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

</div>

Mark S. Parris
Orrick, Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104
(206) 839-4300

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June 2014, I caused the Reply Brief of Defendants-Appellants Leggett & Platt, Inc. and Simmons Bedding Company to be electronically filed with the Clerk of the Court using CM/ECF, which will automatically send notification of such filing to the following counsel of record:

Steven Mark Hanle.


Date: June 2, 2014          By: /s/ *Eric A. Shumsky*
                              *Attorney for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE
## UNDER FEDERAL RULES OF APPELLATE PROCEDURE
## 32(a)(7) AND FEDERAL CIRCUIT RULE 32

Counsel for Defendants-Appellants certifies that the brief contained herein has a proportionally spaced 14-point typeface, and contains 6,343 words, based on the "Word Count" feature of Word 2007, including footnotes and endnotes. Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Table of Contents, Table of Authorities.

Date: June 2, 2014

By: /s/ *Eric A. Shumsky*
*Attorney for Defendants-Appellants*